**Sadie J. McDANIEL, Appellant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 9155.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 8, 1963.

Decided April 13, 1964.

Jacob Matz, Baltimore, Md., for appellant.

Robert J. Carson, Asst. U. S. Atty. (Joseph D. Tydings, U. S. Atty., on brief), for appellee.

Before BELL, Circuit Judge, and BUTZNER, District Judge.

BUTZNER, District Judge:

Two questions are presented by the claimant, who seeks to establish a period of disability and disability benefits under Sections 216(i) and 223 of the Social Security Act.[1] First, did the Appeals Council err in taking administrative notice and in considering medical texts and employment opportunity studies without prior notice to the claimant? Second, was there substantial evidence in the record taken as a whole to support the finding of the Secretary that the claimant's impairments did not prevent her from engaging in any substantial gainful activity?

The claimant's application for a period of disability and disability insurance benefits was denied by the Secretary of Health, Education and Welfare. The District Court remanded the case for consideration of additional evidence and specification by the Secretary of the types of work the claimant was capable of performing.

The Appeals Council, after considering additional medical evidence and stating specifically the types of employment in which the claimant could have engaged, affirmed the Hearing Examiner and denied relief. Final judgment was entered for the Secretary by the District Court after it had carefully reviewed the record and filed a memorandum setting forth the reasons for its decision.

The Appeals Council took administrative notice of medical texts and industrial and governmental studies pertaining to employment opportunities.[2] The Appeals Council used the medical texts primarily to expand and explain medical reports

---

1. 42 U.S.C. §§ 416(i) and 423.
2. The publications considered by the Appeals Council were: White, Heart Disease, 4 ed., p. 566; White, Clues in the Diagnosis and Treatment of Heart Disease, 2 ed., p. 37; Goldwater, Clinical

and opinions. In one instance medical texts were used to refute a doctor's opinion that Class I and Class II heart impairment caused the claimant to be incapacitated and unable to work. The industrial and governmental employment studies were used to show types of available work a person in claimant's condition could pursue. Upon receipt of the decision of the Appeals Council, which made reference to the publications that had been considered, the claimant's attorneys promptly protested the Appeals Council's action in taking administrative notice of the publications. The Appeals Council withheld final decision until after the claimant had been afforded an opportunity to present evidence and arguments against the use of the publications which had been noticed and considered by the Council.

This Court, in Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962), stated the

elements of proof to be considered in making a finding of claimant's ability or disability to engage in any substantial gainful activity. The question of the propriety of taking administrative notice of recognized medical texts and employment studies are not presented to the Court in Underwood. Consequently, this form of proof is not mentioned in that decision.

■ We are of the opinion that the action of the Appeals Council in noticing and considering the publications mentioned in its opinion does not require that the decision of the Secretary be reversed. Sections 205(a) and (b) of the Social Security Act[3] implicitly authorize consideration of this type of evidence. The procedure followed by the Appeals Council conforms with § 7(d) of the Administrative Procedure Act.[4] In accordance with the provisions of this Act the claimant's counsel was afforded an opportunity

Judgment and Common Sense for the Cardiac Patient, A.M.A. Journal, 169:598 (1959) ; Goldberger, Heart Disease—Its Diagnosis and Treatment, 2 ed., p. 767 (1955) ; Durbin and Goldwater, Rehabilitation of the Cardiac Patient, pub. in Circulation, 13:417 (1956) ; DeGraff, Total Disability from Diseases of the Heart, Soc. of Med.Juris., 1942–1950, New York (1954) ; Ungerleider and Gubner, Magnitude of the Problem of the Cardiac-in-Industry, pub. in Work and the Heart (1959) ; Ford and Hellerstein, Energy Cost of the Master Two-Step Test, A.M.A. Journal, 165:1866–75; Criteria Committee of the New York Association, Inc., Pardee, Chairman, Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Blood Vessels, p. 100, 5 ed., 2d pr. (1955) ; Dictionary of Occupational Titles, U.S. Dept. of Labor, Bureau of Employment Security; Marriott, Electrocardiographogenic Disease, Current Medical Digest (1958) p. 43–44.

3. Section 205(a) (42 U.S.C. § 405 [a]) provides:
"The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and fur-

nishing the same in order to establish the right to benefits hereunder."
Section 205(b) (42 U.S.C. § 405 [b]) provides, in part:
" * * *. Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure."

4. Section 7(d), 5 U.S.C. § 1006(d) provides, in part:
" * * *. Where any agency decision rests on official notice of a material fact not appearing in the evidence in the record, any party shall on timely request be afforded an opportunity to show the contrary." The Attorney General's Manual on the Administrative Procedure Act (1947) comments:
"The process of official notice should not be limited to the traditional matters of judicial notice but extends properly to all matters as to which the agency by reason of its functions is presumed to be expert, such as technical or scientific facts within its specialized knowledge. Cf. H.R. Rep. p. 38 (Sen.Dec. p. 272.)
"Agencies may take official notice of facts at any stage in a proceeding—even in the final decision—but the matters thus noticed should be specified and 'any party shall on timely request be afforded an opportunity to show the contrary.' The matters thus noticed become a part of the record and, unless successfully controverted, furnish the same basis for find-

to challenge and to contradict the publications considered by the Appeals Council.

In Opp Cotton Mills v. Administrator, 312 U.S. 126, 154, 61 S.Ct. 524, 537, 85 L.Ed. 624 (1941), the Court pointed out that the findings of the Administrator of the Wage and Hour Division of the Department of Labor rested to a substantial degree upon studies of statistical data gathered by government agencies and published by them officially. The Court said:

> "* * * The statistics gathered, if regarded as of probative force, and the inference drawn from them by the Administrator, taken with other evidence, amply support his findings.
>
> "The argument of the petitioner is not that the record contains no evidence supporting the findings but rather that this class of evidence must be ignored because not competent in a court of law. But it has long been settled that the technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed.[5]

With reference to United States Department of Labor Bulletin and a text pertaining to disability evaluation, Judge J. Joseph Smith said in Rinaldi v. Ribicoff, 305 F.2d 548, 550 (2nd Cir. 1962).

> "* * * A chief value of the administrative procedure is the expertise of the examiners and the range of evidence which is permitted to be introduced unhampered by technical rules of evidence."

In Soler v. Ribicoff, 223 F.Supp. 472 (S.D.N.Y.1960), the Court rejected the plaintiff's contention that it was improper for the Appeals Council to refer to medical texts of recognized authority. Administrative notice of industrial and governmental studies bearing upon employment opportunities was permitted without objection in Graham v. Ribicoff, 295 F.2d 391, 395 (9th Cir. 1961). In Kerner v. Flemming, 283 F.2d 916, 922 (2nd Cir. 1960) the Court commented in remanding the case for a further consideration by the Secretary:

> "* * * the Secretary's expertise should enable him readily to furnish information as to the employment opportunities (including those in sheltered workshops), or the lack of them, for persons of plaintiff's skills and limitations."

■ Taking official notice of pertinent recognized publications is not improper if the requirements of § 7(d) of the Federal Administrative Procedure Act, (5 U.S.C. § 1006[d]) are met. Reviewing courts, however, must scrutinize the use of this type of evidence in determining whether the decision of the Secretary is supported by substantial evidence. When considered with all of the other evidence, the publications may or may not be deemed to contribute to proof constituting substantial evidence. An example may be found in two cases where administrative notice was taken of government publications pertaining to employment opportunities. Compare Stancavage v. Celebrezze, 323 F.2d 373 (3rd Cir. 1963), where the Court held that the publication did not furnish the substantial evidence necessary to sustain the Secretary's decision, with Rinaldi v. Ribicoff, 305 F.2d 548 (2nd Cir. 1962), where the publication was held to be a part of the substantial evidence supporting the Secretary's decision. Moreover, as in Glendenning v.

---

ings of fact as does 'evidence' in the usual sense." (Pp. 79–80).

Failure to afford the claimant the "opportunity to show the contrary" is grounds for remanding the case to the Secretary. Glendenning v. Ribicoff, 213 F.Supp. 301 (W.D.Mo.1962).

5. The Court also pointed out that the documents were received in evidence without objection and that some of the compilers of the data testified. Opp Cotton Mills v. Administrator, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624 (1941). While these factors afforded further justification for the decision reached by the Court, we do not believe that they are essential to the validity of taking administrative notice.

Ribicoff, 213 F.Supp. 301 (W.D.Mo.1962), the use of medical texts by a hearing examiner to refute the unequivocal findings of competent physicians, provides an insufficient basis for a decision that the claimant is not disabled.

■ In short, we conclude that taking official notice of recognized publications is not, in itself, grounds for reversing the decision of the Secretary when the requirements of § 7(d) of the Administrative Procedure Act [6] have been met. We emphasize, however, that reviewing courts must carefully evaluate this type of evidence in determining whether there is substantial evidence in the record taken as a whole to support the decision of the Secretary.

We turn, now, to the claimant's contention that there was not substantial evidence in the record taken as a whole to support the finding of the Secretary that the claimant's impairments did not prevent her from engaging in any substantial gainful activity. The parties agree that the claimant's impairment must have commenced on or before June 30, 1957, when she last had the required insurance status and must have continued without interruption until her application was filed on June 30, 1958. In her application the claimant stated she was born July 7, 1907. She alleged that on February 6, 1954 she broke her hip and that she suffered a heart attack in June 1954, which prevented her from working. She had previously worked as a spinner-machine operator, sheet metal worker and waitress. She had a sixth grade education.

The District Court properly entered final judgment for the Secretary. The medical reports from 1954 through June 30, 1958 indicate that the claimant's ability to work was not significantly impaired. In 1955 the claimant's private physician diagnosed her condition as coronary artery disease with coronary deficiency, compensated normal sinus rhythm, Class I.[7]

In July 1957 she was hospitalized for a back injury. At that time a general physical examination indicated that her heart condition had not become more serious. A year later July 1958, her condition was reported by her personal physician to be Class II–B.[8]

The fractured hip which the claimant sustained in 1954 left her with a slight limp. This injury, however, did not alone or in conjunction with her heart condition significantly impair her ability.

We recognize that the classifications stated by her physician are in the nature of opinion evidence and therefore can not resolve the ultimate fact in issue, which is the claimant's ability or inability to engage in any substantial gainful activity. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962). The Appeals Council, however, did not rely only upon the classification stated by the claimant's attending physician. It considered her medical records and history relating to the critical period. We do not find this contemporaneous evidence inconsistent with the classifications assigned by the claimant's personal physician.

---

6. 5 U.S.C. § 1006(d).

7. The Criteria Committee of the New York Association, Inc., has prepared a book entitled "Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Blood Vessels" (Dr. Harold E. B. Pardee, Chairman, Fifth Ed. 1955), which is distributed by the American Heart Association. Therein Functional Classification of patient is shown as follows (page 81). Class I. Patients with cardiac disease, but without resulting limitation. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain.

8. Class II. Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain. Therapeutic classification Class B. Patients with cardiac disease whose ordinary physical activity need not be restricted, but who should be advised against severe or competitive physical efforts. "Nomenclature and Criteria for Diagnosis of the Heart and Blood Vessels" (Dr. Harold E. B. Pardee, Chairman, Fifth Ed. 1955, pp. 81–82).

The Appeals Council also considered a great deal of conflicting evidence which was developed after the critical period. This included reports of medical examinations made after June 1958 and the opinions of doctors based on reviews of earlier examinations. We find nothing in this conflicting evidence that required the District Court to find that the record considered as a whole was without substantial evidence to support the Appeals Council's decision.

The contemporaneous medical evidence and the history of the claimant provide substantial evidence for the decision that the claimant's impairments, commencing on or before June 30, 1957 and continuing without interruption until she filed her application on June 30, 1958, did not prevent her from engaging in any substantial gainful activity.

The judgment of the District Court is Affirmed.