# Use of Technical Advisers by Board of Contract Appeals

A governmental decisionmaking body, including an agency board of contract appeals, may employ technical advisers to analyze and make recommendations on the technical aspects of evidence. Where a decisionmaker properly uses technical advisers, their reports and recommendations need not be disclosed to the parties to the proceedings; however, where the advice of technical advisers adds new facts to the record or constitutes evidence in itself, a court may require that it be disclosed.

· February 27, 1981

### MEMORANDUM OPINION FOR THE CHAIRMAN, GENERAL SERVICES ADMINISTRATION BOARD OF CONTRACT APPEALS

This responds to your inquiry concerning the proposal of the General Services Administration Board of Contract Appeals (Board) to hire technical staff members with engineering and technical experience who would be full-time employees of the Board. Their function would be to respond to technical inquiries of the Board members in connection with cases pending before the Board and to explain to them technical aspects of the evidence where needed. We understand that it is intended to model the relationship between the technical advisers and the Board members after the one prevailing between the Court of Claims and its auditors and that it is not intended to make the reports of the technical advisers available to the parties.[1]

The functions and powers of your Board may be briefly described as follows: According to Section 6(a) of the Contract Disputes Act of 1978 (Act), 41 U.S.C. § 605(a), all disputes arising from government procurement contracts are to be submitted to a contracting officer. The agency boards of contract appeals, established pursuant to § 8(a) of the Act, 41 U.S.C. § 607(a), have jurisdiction to hear and determine appeals from the decisions of the contracting officers. The boards may grant the same relief that is available to a litigant asserting a contract claim in the Court of Claims. Section 8(d) of the Act, 41 U.S.C. § 607(d). The ruling of the boards may be appealed to the Court of Claims. Section 10(a)(1) of the Act, 41 U.S.C. § 609(a)(1). In that court the decisions of the boards on any question of law are not final or conclusive, "but the

---

[1] In this context we recommend that you examine the pertinent rules and internal regulations of the Court of Claims and of the Court of Customs and Patent Appeals and adapt them to the requirements of your Board.

decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." Section 10(b) of the Act, 41 U.S.C. § 609(b). Section 10(a)(1) of the Act, 41 U.S.C. § 609(a)(1), permits a contractor dissatisfied with the decision of a contracting officer to bypass the board and to bring an action directly in the Court of Claims.

Your inquiry raises two questions. First, whether a decisionmaking body may use assistants who will explain to it technical aspects of the evidence, and, second, whether those explanations may be withheld from the parties to the proceedings. The first question can be confidently answered in the affirmative. As to the second one, it is our conclusion that basically the technical explanations of the type outlined in your letters need not be disclosed to the parties. As a practical matter, however, the line of demarcation between technical advice and the introduction of new facts or of opinion evidence may be very narrow and may depend on the form in which the explanation or advice has been given and the perspective in which the court chooses to evaluate it. Consequently, there may be situations in which a party to the proceedings will be able to obtain disclosure of the technical explanation.

## I.

It has been established, at least since *Morgan* v. *United States,* 298 U.S. 468, 481 (1936) (*Morgan I*), that a decisionmaker may utilize assistants to sift and analyze the evidence and to prepare summaries and to make recommendations.[2] In *Richardson* v. *Perales,* 402 U.S. 389 (1971) the Court saw nothing "reprehensible" in the employment by the Social Security Administration of medical advisers who were to explain medical problems and evidence to the lay administrative law judges in a manner very similar to that envisaged by your Board. 402 U.S., at 408. In *Perales,* however, the medical adviser was called as a witness and was cross-examined. *Id.* at 396. The case therefore does not resolve the second issue raised by your inquiry.[3]

Hence, if the Board has the necessary budgetary authority to employ technical advisers and in the absence of any other statutory prohibition, there appears to be no objection to their employment. This initial

---

[2] *See also, e.g., Braniff Airways, Inc.* v. *CAB,* 379; F 2d 453, 461 (D.C. Cir., 1967), *Montrose Chemical Corp. of California* v. *Train,* 491 F.2d 63, 68 (D.C. Cir., 1974); *KFC National Management Corp.* v. *NLRB,* 497 F.2d 298, 304–5 (2d Cir., 1974), *cert. denied,* 423 U.S. 1087 (1976).

[3] An analogous situation arose in *McDaniel* v. *Celebrezze,* 331 F.2d 426 (4th Cir., 1964). There the administrative agency did not use a technical adviser for the explanation of technical terms, but utilized medical texts to "expand and explain" medical reports and opinions. *Id.* at 427–28 The court upheld the practice because claimant was given an opportunity to challenge and contradict the publications used by the agency *Id.* at 428–29.

conclusion, however, does not mean in itself that the advice given, or explanations made, by the technical advisers may be withheld from the participants to the proceedings.

## II.

According to *Morgan* v. *United States,* 304 U.S. 1, 18 (1938) (*Morgan II*) and *United States* v. *Morgan,* 313 U.S. 409, 422 (1941) (*Morgan IV*), it is not the function of the courts to probe the mental processes by which a decisionmaker reached his conclusion. From this the courts have deduced that where a decisionmaker properly uses assistants as authorized by *Morgan I, supra,* and in the absence of a *prima facie* showing of misconduct,[4] the summaries, reports, or recommendations of the assistant based on the evidence and utilized by the decisionmaker need not be disclosed to the parties to the proceedings, for to do so would impermissibly probe the mental processes leading to the decision. *See, e.g., Montrose, supra,* 491 F.2d at 69-70; *South Terminal Corp.* v. *EPA,* 504 F.2d 646, 675 (1st Cir., 1974); *Kent Corp.* v. *NLRB,* 530 F.2d 612, 620-21 (5th Cir., 1976), *cert. denied* 429 U.S. 920 (1976). This immunity from disclosure, however, presupposes, as is sometimes implied and occasionally spelled out in these court decisions, that the advice or explanation is based exclusively on the record, and does not add any new facts or constitute evidence in itself. Thus, in two cases the denial of access to advice received by a decisionmaker was specifically predicated on the circumstance that the advice was based exclusively on the evidence in the record and did not constitute evidence. *Montrose, supra,* 491 F.2d at 65, 70; *Coppenbarger* v. *Federal Aviation Administration,* 558 F.2d 836, 840 (7th Cir., 1977).

The crux in this area is that it is frequently difficult to determine whether the advice or explanation given by a technical adviser is indeed based exclusively on the facts contained in the record; whether it utilizes extraneous facts, or otherwise constitutes opinion evidence or the taking of official notice, which generally must be made available to the participants. The ultimate decision therefore frequently depends on the evaluation of the advice by the courts and on the form in which it was given.

In *Doe* v. *Hampton,* 566 F.2d 265 (D.C. Cir., 1977), an employee had appealed her dismissal to the Civil Service Commission. The record before the Commission indicated that the employee was schizophrenic. *Id.,* at 268. During the review of the record, the Civil Service Commission Appeal Examining Office asked a doctor employed by the Commission whether the diagnosis contained in the record would make the employee a hazard to herself or others. The doctor replied that "suicide

---

[4] *See, e.g., Citizens to Preserve Overton Park* v. *Volpe,* 401 U S. 402, 420 (1971); *Singer Sewing Machine Co.* v. *NLRB,* 329 F.2d 200, 208 (4th Cir., 1964); *KFC National Management Corp.* v. *NLRB, supra,* 497 F.2d at 305; *Abbott Laboratories* v. *Harris,* 481 F Supp. 74, 78 (N.D. Ill., 1979).

and homicide are of danger in schizophrenia, and it is a most difficult assessment to make as to the possibility or probability of their being a hazard to themselves or others." *Id.* at 270. The court described the Office's inquiry and the doctor's advice to the effect that the Office sought and received a doctor's "additional medical opinion." *Id.* The court concluded that the Appeal Examining Office had introduced further medical opinion evidence in the record, and rejected the argument that the Office had merely obtained assistance in evaluating existing record evidence. *Id.* at 276. Consequently, it held that the discharged employee had the right to see and comment on the doctor's "opinion." *Id.* at 277. It may be suggested that the doctor's response properly could have been characterized as an explanation to the lay officials in the Appeal Examining Office of the existing record evidence, in particular, of the technical term "schizophrenia" and of its normal implications to doctors.[5]

*Ralpho* v. *Bell*, 569 F.2d 607 (D.C. Cir., 1977), *rehearing denied,* 569 F.2d 636 (1977), indicates the importance of the form in which the advice is given. That case sought the review of a damage award by the Micronesian Claims Commission. It involved, like many other proceedings pending before the Commission, the valuation of property destroyed in Micronesia during the hostilities of World War II. Since the proceedings before the Commission took place about 30 years after the damages had been suffered, that valuation was complicated by the passage of time. Additional problems were presented by the primitive, non-monetary economy prevailing in Micronesia while it was under Japanese domination between the two World Wars. The court described the Commission's method of dealing with those difficulties as follows:

> To facilitate disposition of claims, then, the Commission conducted interviews and examined records of various sorts in order to get a composite picture of the average wartime values of goods and services in Micronesia. The results of this survey were assembled in a guide about 40 pages in length, resembling a price list, which was frequently updated and expanded as the need arose. In its 1973 annual report, the Commission explained that the study was consulted "in the absence of better evidence" on the issue of value and that sparse presentations by claimants often made such consultation necessary.

---

[5] Significantly, the court held that the failure to make the doctor's advice available to the claimant was not prejudicial error, because the evidence generated by that advice was "merely cumulative." *Id.* at 277–78. This ultimate disposition of the case suggests strongly that the doctor's advice was essentially an explanation of existing technical evidence, rather than additional opinion evidence.

*Id.* at 614 (footnote omitted). The court concluded that the value study constituted evidence; hence, that the claimant should have been afforded the opportunity to inspect and comment on it. *Id.* at 628.

It is suggested that a procedure could have been developed under which the Commission would have received from technical advisers explanations of the evidence on the record regarding the value of the claimant's property and that a court could have considered those explanations to be the Commission's internal work product to which the parties to the proceeding are not entitled under the *Morgan* cases, *supra,* and their progeny.

### III.

We finally reach the question whether, if your proposal were adopted, there would be a serious risk of a judicial ruling to the effect that the litigants have the right to inspect and to rebut or comment on the technical staff members' advice. To begin with, the decisions of your Board are reviewable in the Court of Claims,[6] and we believe it is unlikely that that court will disapprove a procedure patterned after the one prevailing in it, provided, of course, that the Board will indeed follow that procedure.

There is, of course, the possibility that a litigant will seek the information through discovery or a request filed under the Freedom of Information Act. Still, in view of the presumption of administrative regularity, *Singer Sewing Machine Co., supra,* 329 F.2d at 208, a litigant is not generally entitled to the disclosure of the information absent a *prima facie* showing of irregularity or misconduct. *Singer Sewing Machine Co., ibid; KFC National Management Corp., supra,* 497 F.2d at 305; *South Terminal Corp.* v. *EPA, supra,* 504 F.2d at 675.[7] Hence, the litigant, being unable to get access to, or being unaware of, the staff member's advice,[8] will not normally be able to make the required *prima facie* showing that the advice was irregular or tainted with misconduct. Nevertheless, we believe that we have to advise you that the employment of the technical staff members in the manner envisaged by your Board involves a limited, but still not inconsequential, litigation risk.

LARRY L. SIMMS
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[6] Contract Disputes Act of 1978, § 8(g), 41 U.S.C. § 607(g).

[7] Exemption 5 to the Freedom of Information Act, 5 U.S.C. § 552(b)(5) (internal memoranda), does not state in express terms that it is inapplicable where the internal communication is tainted with irregularity or misconduct *Montrose, supra,* however, suggests strongly that the court would not have applied the exemption in that case if the advice given to the agency had included facts that were not on the record. *See also Kent Corp.* v. *NLRB, supra,* 530 F.2d at 621, n.21.

[8] In some cases the parties were alerted to the existence of the advice by a reference to it in the agency's decision or elsewhere *See, e.g., Hampton, supra,* 566 F.2d at 270; *Ralpho, supra,* 569 F.2d at 614.