**James PECK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 76 Civ. 983(CES).**

United States District Court, S. D. New York.

Sept. 10, 1980.

See also, D.C., 470 F.Supp. 1003.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, for plaintiff; Edward Copeland, Eric M. Lieberman, Lewis A. Kornhauser, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendant; Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge.

Plaintiff James Peck has moved in this Court, pursuant to F.R.Civ.P. 26, 34 and 37, for an order requiring the defendant United States to permit the plaintiff to copy and inspect five different categories of documents. Defendant has objected to the plaintiff's requests on grounds of privilege and relevance. The scope of discovery is set out in Rule 26, F.R.Civ.P. which provides, in relevant part:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

For the reasons set forth below, plaintiff's motion is denied *in its entirety.*

*I Standards for Determining Relevance*

The "subject matter" of this action is set out in our prior decision denying defendant's motion to dismiss, 470 F.Supp. 1003

(S.D.N.Y.1979). There we held that plaintiff had asserted a cause of action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346. Plaintiff alleged that various agents of the Federal Bureau of Investigation ["FBI"] had advance knowledge of a conspiracy to assault participants in a 1961 "Freedom Ride" to Birmingham, Alabama and that although it had the power to prevent the resulting violence, it failed to do so. We held that these allegations, if proven, would establish a violation of 42 U.S.C. § 1986 and that, under Alabama law, this established negligence *per se*. An "immunity" defense was interposed which we held to be "qualified" only— i. e. based upon good faith and reasonable grounds. A further issue raised on the motion to dismiss was whether or not this action was barred by the two years statute of limitations. This action would be barred unless we were to apply a "due diligence-discovery" rule, and we held such a rule applicable only if the plaintiff was successful in establishing fraudulent concealment— an issue not ripe at that time for resolution.

The relevant time period for purposes of this discovery motion is that established by Magistrate Scheiber with respect to the various discovery motions made in connection with defendant's motion to dismiss:

> Then I will give it to you from nine months before [the May 14, 1961 assault] to three months after ... So all dates will be September 31, 1960 to August 3[1], 1961.

See Exhibit D to Salerno affidavit at 12.

### II Task Force Report on Gary Thomas Rowe, Jr.

Plaintiff has moved for an order requiring the defendant United States:

> (a) to permit plaintiff to inspect and copy all reports promulgated by the "Gary T. Rowe, Jr. Task Force", all documents reviewed by or considered by said Task Force and all documents reflecting upon or referring to any or all reports by said Task Force.

The Gary T. Rowe, Jr. Task Force ["Task Force"] was apparently established in the latter part of 1978:

On July 12, 1978, Senators Edward M. Kennedy and James Abourezk indicated that the Senate Judiciary Committee was "intently interested" in receiving a full report of an investigation into allegations that Gary Thomas Rowe, Jr. committed a violent crime while acting as an informant for the Federal Bureau of Investigation. As Acting Attorney General of the United States, I directed the office of Professional Responsibility to undertake an investigation into the Federal Bureau of Investigation's handling of Gary T. Rowe, Jr. A Task Force was established by the Office of Professional Responsibility, and they did conduct an investigation of the matter.

Civiletti affidavit ¶ 5. As to the Report of the Task Force, Mr. Civiletti affirms that:

> The material generated by the Gary T. Rowe, Jr. Task Force has been submitted to the Office of the Deputy Attorney General for review and recommendation. This Office can either return the material to the Office of Professional Responsibility for revision and further investigation or they can forward it to my attention with their recommendations. To date, the material has not been forwarded for my consideration, and I have made no decision with respect to the composition of a final report.

*Id.* ¶ 6. Mr. Civiletti then asserts:

> I have conferred with those who prepared the Task Force Report, and with those who were responsible for the preparation of the Report, and I have personally considered the attached affidavit of Michael E. Shaheen, Jr., Counsel of Professional Responsibility, Department of Justice.
>
> As Attorney General of the United States, after due deliberation and personal consideration, I formally claim privilege as to all documents and reports generated by the Gary T. Rowe, Jr. Task Force and its individual members.

*Id.* ¶¶ 3 and 4.

### A. Scope of the Privilege

The privilege asserted here by Mr. Civiletti is referred to in Rule 509 of the Pro-

posed Rules of Evidence Promulgated by the Supreme Court, as the "official information privilege." Although this Proposed Rule was not adopted by Congress, it nevertheless serves as a "useful guide and standard" *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577, 580 (E.D.N. Y.1979) because it was intended to summarize existing case law defining the scope of the privilege. Under Proposed Rule 509 the Government has a qualified privilege. The Government may withhold material if it shows that there is a reasonable likelihood of danger that the evidence sought to be discovered will disclose information within the custody or control of a governmental department or agency (whether initiated within the department or agency or acquired by it in its exercise of its official responsibilities) and not otherwise available to the public pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ["FOIA"], particularly intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policy–making functions, see 5 U.S.C. § 522(b)(5), or investigatory files compiled for law enforcement purposes and not otherwise available, see 5 U.S.C. § 522(b)(7). The Government further must show that disclosure would be contrary to the public interest. The policy basis for the "intragovernmental opinions and recommendations" aspect of the privilege is the desirability of encouraging candor in the exchange of views within the government. Advisory Committee's Note to Section 509, subdivision (a). As a result, this portion of the privilege protects only internal communications consisting of advice, recommendations, opinions and other material reflecting deliberative or policy–making processes, but not purely factual material. Factual information may be protected only if it is inextricably intertwined with policy–making processes. The policy basis for the "investigative files" aspect of the privilege is, in part, the need for uninhibited disclosure to the government. It reflects a concern that the Government will be deprived of needed information unless its confidentiality is honored. The privilege is intended to protect

confidential information to the extent that such information cannot otherwise be withheld pursuant to specific statutory provisions, the hearsay rule, or the informant's privilege (which extends only to the identity of the informant and to the disclosure of information which might reveal his identity).

A leading case on the "intragovernmental opinions and recommendations" aspect of the privilege is *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966) *aff'd on opinion sub nom. V.E.B. Carl Zeiss, Jene & Clark,* 384 F.2d 979 (D.C.Cir.) *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1962). In this trademark action between two German corporations, the Government, which was not a party, objected to portions of a subpoena served upon it, the Attorney General asserting a privilege as to "intra–departmental memoranda and inter–departmental communications composed wholly of opinions, recommendations and deliberations relating to legal and other determinations." *Id.* at 327. The court upheld the government's assertion of the privilege, declining to even conduct an *in camera* review of the documents, because:

> Accepting here the teaching of some of the decisions that the privilege is qualified, and by weighing the detrimental effects of disclosure against the necessity for production shown, the claimant's demonstration is anemic to the point that no delineation of the outer parameters of the privilege is called for.

*Id.* [footnotes omitted]. The claimants' need was "anemic", in substantial part because:

> The claimants' presentation is also devoid of a showing that the papers already furnished have not supplied the great bulk of the information for which the claimants earlier professed a need. Nothing appears that would make illogical the assumption that, the number and diversification of these documents considered, fresh non–governmental sources of information were indicated by exploration of which, through deposition or otherwise, additional information could be devel-

oped. There is nothing beyond sheer speculation to even hint that the information the retained communications drew upon as the basis for the opinions and recommendations expressed does not appear or is not discoverable from the mass of data the claimants now possess. Necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored.

*Id.* at 328 (emphasis added). Other factors considered were that disclosure might have diplomatic implications, that no charge of governmental misconduct or perversion of governmental power was advanced, and that the Government was not a party to the action so that no problem of unfair litigating advantage was presented. *Id.* at 328–329.

A more recent case involving the "intra-governmental opinions and recommendations" aspect of the privilege is *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577 (E.D.N.Y.1979). In an action arising out of the collapse of the Franklin National Bank (FNB), the Federal Deposit Insurance Corporation (FDIC) sought to compel the Office of the Comptroller of the Currency (OCC) to produce periodic examination reports it conducted of FNB, and various OCC summaries and analysis of the reports. The court, which characterized the official information privilege as a "qualified one" which required *ad hoc* balancing of the Government's interest in nondisclosure with the litigant's interest in accurate judicial findings, indicated that as a result of this "clash of strong competing interests" the privilege "usually requires examination of the documents *in camera*", *Id.* at 582, and identified the following factors as ones that should be considered:

In this balancing of competing interests, some of the factors that assume significance are (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence, *see e. g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 331 (D.D.C.1966), *aff'd on opinion below*, 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied*, 389 U.S. 952, 88

S.Ct. 334, 19 L.Ed.2d 361 (1967); (iii) the 'seriousness' of the litigation and the issues involved, *see e. g., Freeman v. Seligson*, 132 U.S.App.D.C. 56, 60, 405 F.2d 1326, 1340 (D.C. Cir. 1968); (iv) the role of the Government in the litigation, *see, e. g., Carl Zeiss Stiftung*, 40 F.R.D. at 329; *Bank of Dearborn v. Saxon*, 244 F.Supp. 394, 401–03 (E.D.Mich.1955), *aff'd*, 377 F.2d 496 (6th Cir. 1967); and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

The court reviewed the documents *in camera*. The court ruled that it would order discovery as to the Examination Reports. With respect to the Government's interest in non–disclosure the court found:

Although the tone of the examiner's comments is often blunt and chatty, the content is primarily reportorial and expository, not deliberative. The Examination Report contains the raw data of the bank examination, not the discussions, deliberations and consultations 'comprising part of a process by which governmental decisions and policies are formulated.' (citation omitted).

*Id.* at 585. The court also found that under "the unique circumstances of this case" the Government "exaggerates the danger" that disclosure would have "a chilling of the relationship between bank examiners and bank officials." *Id.* at 586. With respect to the interests in disclosure, the court focused upon the fact that here:

. . . no satisfactory alternative source of information exists. The Examination Reports provide a unique and objective contemporaneous chronicle of the financial decline of Franklin National Bank; no satisfactory substitute exists. (citation omitted).

*Id.* An additional factor identified by the court was that:

A strong public interest . . . demands that the confidential sections be disclosed to fully air the story behind the bank's collapse and to help evaluate the adequa-

cy of existing bank examination procedures.

*Id.* at 587. The court upheld the assertion of the privilege as to the Summaries because "the objective facts are otherwise available" and they "constitute[d] part of the 'consultative functions of government' exercised by officials at a policy making level that the privilege seeks to protect." *Id.* at 588. The discussion with respect to one of the documents, the "Gerzema Review Memoranda" is particularly apt here:

Although the Gerzema Review Memoranda only summarize the Examination Reports on Franklin National Bank and highlight problem areas for review by senior officials, this very review and selection constitutes a step in the agency's deliberative process, albeit only an initial step. Separation of the important fact from the unimportant is basic to any deliberation. *Cf. Montrose Chemical Corporation of California v. Train,* 160 U.S. App.D.C. 270, 278, 491 F.2d 63, 71 (1974) (for purposes of the Freedom of Information Act; 'The work of the assistants in separating the wheat from the chaff is surely just as much part of the deliberative process as is the later milling by running the grist through the mind of the administrator.') Thus with respect to the Gerzema Review Memoranda as well, the policy of encouraging free and open communication between subordinate and chief is strongly implicated.

*Id.*

*Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir.) *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963) deals with the scope of the "investigative files" exception. In *Machin* the plaintiff, a member of the crew of a United States Air Force B–25 bomber that crashed, sought a copy of an Aircraft Accident Investigative Report prepared by the Air Force immediately after the accident. The Government asserted a privilege as to the documents asserting that disclosure would be harmful to the public interest:

According to the Inspector General, the Air Force's flight safety program, a ma-

jor aspect of which is the investigation of accidents, has contributed greatly to a continuously decreasing rate of accidents involving Air Force planes and personnel. The success of the program depends in large part on the ability of the investigators to get full information on the cause of any accident. Lacking the power to compel testimony, the investigators encourage frank and full cooperation by means of promises that witnesses' testimony will be used solely for the purposes of flight safety and will not be revealed to persons outside the Air Force. The Inspector General went on to say that: " * * * if investigators were unable to give such assurances, testimony in many instances would be less than fully factual and the determination of the exact causative factors would be jeopardized, thus seriously hindering the accomplishment of prompt corrective action designed to preclude recurrences of similar accidents. Technical representatives of the aviation industry currently assisting in aircraft accident investigations could not be expected to find their company at fault if their reports could be used in actions against their companies."

The Court held:

We agree with the Government that when disclosure of investigative reports obtained in large part through promises of confidentiality would hamper the efficient operation of an important Government program and perhaps even, as the Secretary here claims, impair the national security by weakening a branch of the military, the reports should be considered privileged. Especially is that so when they are sought in connection with a litigation to which the Government is not a party and when the responsible executive official has been as cooperative as the record in this case reveals the Secretary to have been.

Insofar, therefore, as the subpoena sought to obtain testimony of private parties who participated in the investigation, we agree with the District Court that such information in the hands of the

Government is privileged. The privilege extends to any conclusions that might be based in any fashion on such privileged information. Also, a recognized privilege attaches to any portions of the Report reflecting Air Force deliberations or recommendations as to policies that should be pursued.

*Id.* at 339.

### B. Procedure

■ There must be a formal assertion of the privilege. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1952) is the starting point for any analysis of the procedures that must be followed in asserting executive privilege. *Reynolds* was an action for wrongful death brought against the United States under the Federal Tort Claims Act by the widows of three civilian observers killed in the crash of an Air Force plane testing secret electronic equipment. The plaintiffs moved for production of the Air Force's official accident investigation report and the statements of the three surviving crew members taken in connection with the official investigation. The Government objected, asserting privilege, which the Court construed to be "the privilege against revealing military secrets." *Id.* at 6, 73 S.Ct. at 531. The Court then asserted the following oft–quoted language:

... the principles which control the application of the privilege emerge quite clearly from the available precedents. The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

*Id.* at 7–8, 73 S.Ct. at 532 (Footnotes omitted). These procedural prerequisites have been applied to the official information privilege as well, *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975). In *Kinoy* former Attorney General Richardson opposed discovery of records of three wiretaps on grounds of privilege. The court held the affidavit "defective as a formal claim of privilege because it contains no indication that the Attorney General personally considered the material and decided that disclosure would seriously endanger national interest," *Id.* at 10, that "Procedurally [official information] claims of privilege, like those based upon military and state secrets, must be lodged by the head of the agency concerned, after personal consideration of the material and evaluation of the risks of disclosure." *Id.* at 11.

Proposed Rule 509 is more flexible than existing case law. Subsection (c) provides:

(c) Procedures.–The privilege for secrets of state may be claimed only by the chief officer of the government agency or department administering the subject matter which the secret information sought concerns, *but the privilege for official information may be asserted by any attorney representing the Government.* The required showing may be made in whole or in part in the form of a written statement. The judge may hear the matter in chambers, but all counsel are entitled to inspect the claim and showing and to be heard thereon, except that, in the case of secrets of state, the judge upon motion of the Government, may permit the government to make the required showing in the above form *in camera.* If the judge sustains the privilege upon a showing *in camera,* the entire text of the Government's statements shall be sealed and preserved in the court's records in the event of appeal. *In the case of privilege claimed for official information the court may require examination in camera of the information itself.* The judge may take any protective measure which the interests of the Government and the furtherance of justice may require. [Emphasis added].

The advisory note on this subsection explains that:

In requiring the claim of privilege for state secrets to be made by the chief departmental officer, the rule again follows *Reynolds*, insuring consideration by a high–level officer. This provision is justified by the lesser participation by the judge in cases of state secrets. The full participation by the judge in official information cases, on the contrary, warrants allowing the claim of privilege to be made by a government attorney.

## C. Discussion

 Mr. Civiletti has asserted the privilege as to plaintiff's entire request. However, various portions of that request are not discoverable on other grounds. The defendant has submitted affidavits which indicate that "plaintiff has, in fact received, in virtually unredacted form, every document considered by the Task Force on the subject of the 1961 Freedom Ride and the assault on the plaintiff in Birmingham, Alabama on May 14, 1961," Salerno affidavit ¶¶ 3, 40–43; Vornberger affidavit at 9. Thus, that portion of plaintiff's request seeking "all documents reviewed by or considered by said task force" is denied. Furthermore, plaintiff has not identified what documents it seeks to discover through that portion of its request seeking "any documents reflecting or referring to any or all reports by the Task Force," nor has plaintiff provided us with any basis for concluding that such documents exist. We will therefore deny that portion of plaintiff's request. The final portion of plaintiff's request focuses upon the Task Force Report itself. We have carefully reviewed the entire Report *in camera*. To the extent that the Government seeks to preclude the release of material in that Report that would jeopardize the physical safety of present and former informants of the FBI, Civiletti affidavit ¶ 10, Shaheen affidavit ¶ 7, it can rely upon the "informant privilege". *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1977). Other portions of the Task Force Report are not discoverable because they are simply not relevant to this proceeding. Thus the privilege needs to be asserted only as to the remaining portions of the Report.

Plaintiff contends that the Government's assertion of executive privilege is procedurally defective in that (a) the Attorney General, and possibly even Shaheen, have not personally reviewed the material requested; (b) the statutory basis for the claim is nowhere revealed; and (c) neither the affidavit of the Attorney General nor that of Michael E. Shaheen, Jr. describe the requested material in sufficient detail:

> Each of these defects prevents judicial scrutiny of the claim and requires rejection of the claim or at the very least indicates the need for *in camera* inspection by the court.

Plaintiff's Reply Memorandum of Law at 24.

 Plaintiff's first objection is the most serious one. The Attorney General apparently did not personally review the material before asserting the privilege:

> The material generated by the Gary T. Rowe, Jr., Task Force has been submitted to the Office of the Deputy Attorney General for review and recommendation. This Office can either return the material to the Office of Professional Responsibility for revision and further investigation, or they can forward it to my attention with their recommendations. To date, the material has not been forwarded for my consideration, and I have made no decision with respect to the composition of a final report.

Civiletti affidavit ¶ 9. Rather, the Attorney General relied upon discussions he had with the persons who prepared and who were responsible for the preparation of the Report, and he relied upon the affidavit of Mr. Shaheen who had "overall responsibility for the efficient and effective operation of the internal inspection unit of the Department of Justice." Civiletti affidavit ¶ 3, Shaheen affidavit ¶ 2. The Government suggests under these circumstances this was sufficient, that it would be inappropriate for us to go further and to:

> intrude upon the internal deliberations of the Department of Justice by requiring

the Attorney General to read tentative drafts of reports prior to their submission to him by his subordinates.

Government's Memorandum of Law at 22. We agree. The Attorney General personally considered whether the privilege should be asserted after consulting with the head of the office responsible for, and with other persons familiar with, the Report. The Attorney General declined to personally review the material itself only because, in the standard course of internal operation, the Report was not yet at the stage where it would be appropriate for him to do so. Under these circumstances, and subject to *in camera* review by this Court, see Advisory Note to Proposed Rule 509(c), we do not think that the failure of the Attorney General to personally review the material was fatally defective to the assertion of the privilege. *Cf. Clift v. United States*, 597 F.2d 826 (2d Cir. 1979), *Association for Women in Science v. Califano*, 566 F.2d 339 (D.C. Cir. 1977).

■ Plaintiff's claim that to assert the privilege "the United States must point to some statutory basis for confidentiality", Plaintiff's Memorandum of Law at 29, is without merit. There are specific federal statutory "official information privileges— however, the privilege asserted here clearly falls within the common law official information privilege. *See, Note, Discovery of Government Documents and the Official Information Privilege*, 76 Columbia Law Review 142, (1976), particularly at 156–165. We also find that the Government has asserted the privilege in a sufficiently particularized manner, particularly since we have also reviewed the documents *in camera*.

■■ Reaching the merits of the privilege claim we find that the remaining portions of the Report are protected by the privilege. The Report here is very much like the "Gerzema Review Memoranda" in *In re Franklin National Bank Litigation, supra* –the Report is essentially a summary of the documents and the testimony of various persons and it "highlight[s] problem areas for review by senior officials". The Government's claimed need for non–disclo-

sure is weakened somewhat by the fact that Mr. Civiletti will be submitting a final Report to the Congress and to the public, that the tentative Report has been "leaked" to, and reported in, The New York Times, and that a portion of one of the Appendices to the Report has been released pursuant to a Freedom of Information Act request by an individual not involved in this litigation. We note, however, that public release of the final Report does not require disclosure of a tentative draft of that Report which may be modified or rejected before its final issuance, *see* Civiletti affidavit ¶ 9, and which is therefore, by its very nature, more deliberative. Furthermore, the fact that portions of the report were "leaked" in the press does not lessen the need for non–disclosure inasmuch as it is the organization of the material in the Report which renders the Report, in part, deliberative, and inasmuch as there is no indication that the portions of the Report claimed to be confidential have been publicly released. Finally, disclosure of a factual portion of the Appendices does not call for release of the more deliberative text.

Moreover, even though the Government's need for non–disclosure is not overpowering, the plaintiff's showing that it needs disclosure is not compelling. True, this action is against the Government for its misconduct. However, the Report itself has no evidentiary value, and all of the objective facts in the reports, except for those given to the Task Force under promises of confidentiality, *see* Shaheen affidavit ¶ 3, are otherwise available. Plaintiff has all the documents referred to in the Report and all the relevant witnesses other than those protected by the informant's privilege are known, and are available to plaintiff. *See also* the transcript of the desposition of Rowe. As to the objective facts given under the promise of confidentiality, they are privileged under *Machin v. Zuckert, supra.*

### III Plaintiff's Other Requests

■ Plaintiff seeks to "inspect and copy unredacted copies of documents previously produced in redacted form . . . and all documents withheld from production on grounds other than the assertion of infor-

mant's privilege". The United States Attorney has affirmed that:

> In response, the Government contends that it will reproduce the headquarters incident file with only proper discovery deletions ... As to the remaining documents, either deleted or withheld, it is the Government's position that all withheld material is properly privileged from discovery, either by the informant's privilege or because it is irrelevant. Plaintiff has been furnished a code describing the deletions made by the FBI in the documents produced. See Appendix N to plaintiff's motion papers.

Salerno affidavit ¶¶ 4, 34(f). The Code is as follows:

### CODE REFLECTING BASIS FOR DELETION IN PECK AND BERGMAN

*Privilege*

A. Informant symbol.

B. Informant file number.

C. Information tending to identify informant.

D. Identifying information as to source requesting confidentiality.

E. Identifying information as to source, with whom there was a presumption of confidentiality.

F. Information on individuals mentioned in documents not requested.

G. Information, the disclosure of which could jeopardize or interfere with foreign relations.

H. Information, the disclosure of which could jeopardize an ongoing investigation.

J. Information concerning Grand Jury Proceedings.

Contrary to plaintiff's contention, we do not find that, as a general matter, this code is inadequate. Nor has plaintiff shown, as to any particular document or portion thereof, that use of this code has resulted in the withholding of otherwise discoverable material. Plaintiff also contends that it is entitled to discover "Information concerning Grand Jury Proceedings", particularly the Grand Jury proceedings relating to the Anniston bus burning. Plaintiff relies upon *Douglas Oil Co. of California v. Petrol Stops*

*Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). However, on the record before us, plaintiff has not made the requisite showing of particularized need as to a discrete portion of the Grand Jury transcript which *Douglas Oil Co., supra,* requires, to justify a breach of the traditional secrecy of the grand jury.

Plaintiff also seeks to discover "documents which may be found in the files of twenty–five field offices". The Government, at oral argument, indicated that it would turn over any such documents "not previously produced in this litigation" subject to our later review should that be necessary. Transcript of Hearing on June 19, 1980 at 17–26.

Plaintiff also seeks to discover documents "with respect to the surveillance of and activities of the Ku Klux Klan in Birmingham, Alabama in 1960" and "concerning or by Gary T. Rowe, Jr." In light of our adoption of Magistrate Scheiber's ruling as to relevance which is referred to in Part I of this Opinion, this request has been complied with. *See* Salerno affidavit ¶ 7–8.

The motion is dismissed. Any further discovery should proceed forthwith.

SO ORDERED.