**Walter BERGMAN and Frances Bergman, Plaintiffs,**

v.

**Barrett G. KEMP, individually and as a former employee of the Federal Bureau of Investigation, and four unknown agents of the Federal Bureau of Investigation, Thomas J. Jenkins, individually and as a former employee of the Federal Bureau of Investigation, Defendants.**

**No. G 77–6.**

United States District Court,
W.D. Michigan.

Feb. 28, 1983.

---

See also, 551 F.Supp. 407.

William Goodman, Neal Bush, Detroit, Mich., for plaintiffs.

R. Joseph Sher, Torts Branch, Civil Division, U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

ENSLEN, District Judge.

On January 21, 1983, Defendants filed with the Court a Motion in Limine seeking to preclude the evidentiary use of the draft report of the Task Force which inquired into the activities of Gary Thomas Rowe, Jr. while an informant for the Federal Bureau of Investigation. Defendants also seek to preclude the use of the official Summary of Results of the Task Force as published by Attorney General Benjamin Civiletti. The motion is premised upon both Rule 407 of the Federal Rules of Evidence and on "developing principles of law which encourage critical self-examination and operate to protect that process from contamination by the threat of litigative use." (Defendants' brief in support, p 1). The Plaintiffs filed a brief in opposition on February 25, 1983.

In *Peck v. United States,* 88 F.R.D. 65 (S.D.N.Y.1980), Judge Stewart explained how the Task Force was established by quoting from the affidavit of Attorney General Civiletti:

On July 12, 1978, Senators Edward M. Kennedy and James Abourezk indicated that the Senate Judiciary Committee was "intently interested" in receiving a full report of an investigation into allegations that Gary Thomas Rowe, Jr. committed a violent crime while acting as an informant for the Federal Bureau of Investigation. As Acting Attorney General of the United States, I directed the office of Professional Responsibility to undertake an investigation into the Federal Bureau of Investigation's handling of Gary T. Rowe, Jr. A Task Force was established by the Office of Professional Responsibility, and they did conduct an investigation of the matter. *Id* at 68.

Judge Stewart considered the "official information privilege" proffered by the government to preclude from evidence,

among other things, the Task Force Report. He concluded that release of material in the Report which would jeopardize the physical safety of present and former informants of the FBI should be precluded and that other portions of the Task Force Report were not "discoverable" because they were "simply not relevant to this proceeding." *Id.* at 73. In this case, the Court has conducted an *in camera* inspection of the Task Force Report and the documentation utilized by the Task Force to compose the Report, has made findings of fact based upon that inspection, and will make further findings of fact based upon a subsequent inspection of this material and material more recently ordered in order to protect the physical safety of these informants from being jeopardized.

With respect to the remainder of the Task Force Report, Judge Stewart opined that those portions are protected by the "official information privilege," and in doing so commented:

> Moreover, even though the Government's need for non-disclosure is not overpowering, the plaintiff's showing that it needs disclosure is not compelling. True, this action is against the Government for its misconduct. *However, the Report itself has no evidentiary value,* and all of the objective facts in the reports, except for those given to the Task Force under promises of confidentiality, *see* Shaheen affidavit ¶ 3, are otherwise available. Plaintiff has all the documents referred to in the Report and all the relevant witnesses other than those protected by the informant's privilege are known, and are available to plaintiff. *See also* the transcript of the desposition [sic] of Rowe. As to the objective facts given under the promise of confidentiality, they are privileged under *Machin v. Zuckert* [316 F.2d 336 (D.C.Cir.1963)], *supra.* (Emphasis supplied, *Id* at 74).

This decision though, was not Judge Stewart's final word upon the issue, as at 514 F.Supp. 210 (S.D.N.Y.1981), the court's prior opinion was modified. There, plaintiff James Peck contended that release of the "Summary of Results of the Department of Justice Task Force Investigation on Gary Thomas Rowe, Jr." waived the qualified privilege for official information and required disclosure of the Rowe Report. The court agreed and found that the government's voluntary disclosure of a significant portion of the privileged matter of the Task Force Report in the Summary waived the qualified official information privilege. Accordingly, Judge Stewart concluded that "full disclosure of the relevant portions of the Rowe Report is warranted." *Id* at 213. The following parts of the Report were ordered produced:

1. pages 4–6 (to "However, on another occasion. . . .");
2. pages 15 (from "FBI Guidelines") and 16 (to "Cointelpro");
3. pages 30–64;
4. Appendix III, pages 20 (from "b.) Supervision of Informants")—36 (to "Former Agent. . . .");
5. Appendix III, page 42, sentence beginning "Of the nine . . .";
6. Appendix III, pages 44–46 (to footnote 110). *Id* at 213.

Indeed, not only has Judge Stewart required that these portions of the Task Force Report be disclosed to the plaintiff in *Peck,* but he has also received the Task Force Report into evidence, reserving for future determination what parts of the Report he was receiving for the truth of the matter asserted and what portions he was receiving for other purposes. It is clear, though, that Judge Stewart has found the aforementioned pages relevant to the underlying issues of Peck's causes of action.

■ Here, as opposed to the circumstances in *Peck,* the government has interposed the "critical self-examination report privilege" as a ground for the exclusion of the Task Force Report from evidence. Before considering the merits of this claim, I note, after reviewing the Report, that much of it is irrelevant to Plaintiff Walter Bergman's case in that the majority of the Report concerns Rowe's activity at and near the time when Viola Liuzzo was slain. However, portions of the Report, as outlined by Judge Stewart, are highly relevant to Plaintiffs' causes of action.

Even though the rules of civil procedure do not define "privileged," the term is generally understood to refer to those *evidentiary privileges applicable at trial. United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Boyd v. Gullett,* 64 F.R.D. 169 (D.C.Md.1974). In *Peck, supra,* Judge Stewart wrote at 212:

> Voluntary disclosure of a significant part of the privileged communications may waive the privilege. *See* Proposed Fed.R. Evid. 511; *North Dakota ex rel. Olson v. Andrus,* 581 F.2d 177, 180 (8th Cir.1978) (waiver of FOIA exemption for intragovernmental memoranda, 5 USC § 552(b)(5) (1976); *United States v. American Tel. & Tel. Co.,* 86 F.R.D. 603, 637 (D.D.C.1980) (establishing guidelines for resolution of privilege claims); *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453, 463 (S.D.N.Y.1973) (attorney client privilege). Alternatively, if a release creates even "an unintended false impression" of the underlying material, the privilege may be waived. *See Moore-McCormack Lines, Inc. v. I.T.O. Corp.,* 508 F.2d 945, 948 (4th Cir.1974); *In re Frankling National Bank Securities Litigation,* 478 F.Supp. [577] at 585.

As discussed, Judge Stewart concluded that the Summary voluntarily revealed a significant portion of the Task Force Report and hence, waived the government's qualified privilege for official information. There is no reason to differentiate between the privilege asserted in *Peck* and the privilege asserted in the case *sub judice* for waiver purposes with respect to that information which is relevant to Plaintiffs' causes of action. Accordingly, I find that voluntary disclosure of a significant portion of the purportedly privileged matter of the Task Force Report in the Summary waived the critical self-examination report privilege.

■ In any event, after carefully examining the privilege's application to this case, I am of the opinion that it is unavailable to the Defendants. In *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.C.D.C.1070), *reaff'd,* 51 F.R.D. 187 (D.C.D.C.1970), *aff'd,* 479 F.2d 920 (CADC 1973), a medical malpractice action, the plaintiff sought to discover minutes and reports of the defendant hospital including those of certain staff meetings the sole objective of which was "... improvement of medical procedures and techniques ..." *Id* at 250. In denying the plaintiff's request for the production of such documents, the court perceived a strong public interest in promoting health care improvements by preserving the confidentiality of hospital staff meetings and thereby encouraging the continued unimpeded free flow of ideas and advice. The *Bredice* court concluded:

> Absent evidence of extraordinary circumstances, there is no good cause shown requiring disclosure of the minutes of these meetings. *Id.* at 251.

This result was followed in *Banks v. Lockheed-Georgia Company,* 53 F.R.D. 283 (N.D.Ga.1971), where plaintiffs, in a discrimination suit, were precluded from obtaining copies of a report prepared by defendant employer's research team appointed to study the employer's problems in the area of equal employment opportunities, which report included a candid self-analysis and evaluation of the employer's actions. Unlike *Bredice,* the report which the plaintiffs sought to discover in *Banks,* was apparently prepared in preparation of trial and was composed to insure that measures would be undertaken by the employer to comply with the law. The court, therefore, concluded that the discovery of the report was also precluded by Rule 26(b)(3) of the Federal Rules of Civil Procedure. In addition, unlike *Bredice,* the *Banks* court ordered the employer to provide the plaintiffs with any factual or statistical information that was available to the research team at the time the study was conducted.

The critical self-evaluation privilege, moreover, "at the most remains largely undefined and has not generally been recognized." *Lloyd v. Cessna Aircraft Company,* 74 F.R.D. 518, 522 (E.D.Tenn.1977), where the "privilege" for self-evaluation reports was held not to prevent discovery. *See also, O'Connor v. Chrysler Corporation,* 86 F.R.D. 211, 216 nn 10, 11 (D.C.Mass.1980)

and the cases cited therein. Further, in *Davidson v. Light,* 79 F.R.D. 137 (D.C.Col. 1978), a medical malpractice action, the court held discoverable an "infection control report" which contained both factual data relating to the plaintiff patient's infection and the opinion and evaluations by a review committee of the care received by the patient from the staff. Notably, as is apparent here, the *Davidson* court found an important distinction from the facts of *Bredice:*

> It is also apparent here that some of the Infection Control Committee's activities have already been described to the plaintiff, due to the apparent release by the hospital of that committee's meeting minutes to the plaintiff. *Plaintiff's Brief in Support of Motion to Compel,* 1. No such breach in confidentiality occurred in the *Bredice* situation. *Id.* at 140.

Finally, in *Robinson v. Magovern,* 83 F.R.D. 79, 86–87 (W.D.Penn.1979), the court called into question the very existence of the "critical self-examination privilege":

> There is further cause to question the vitality of *Bredice* in light of the decision in *United States v. Nixon* [418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039], *supra,* requiring the President to produce tape recordings and documents relating to his conversations with aides and advisors for use at a pending criminal trial. One ground argued by the President was the need for protection of communications between high government officials and those who advise and assist them. The Supreme Court acknowledged that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." Nevertheless, the Court held that this "powerful interest in confidentiality" must yield to a demonstrated specific need for evidence. Recently in *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the Supreme Court affirmed *United States v. Nixon, supra,* on the principle that "[e]videntiary privileges in litigation are not favored and even those rooted in

the Constitution must give way in proper circumstances." 441 U.S. at 175, 99 S.Ct. at 1648. In *Herbert,* inquiry was requested and ordered into the editorial processes of those alleged to be responsible for a defamatory publication, despite the defendant's argument that "frank discussion among reporters and editors will be dampened and sound editorial judgment endangered if such exchanges, oral or written, are subjected to inquiry by defamation plaintiffs."

*See also, Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y.1971) where the privilege was not applied.

Because of the circumstances which have developed in this case, I am not called upon to determine whether such privilege exists since, in my opinion, it does not apply to the relevant portions of the Task Force Report. Here, whatever confidentiality existed in the Report has already been destroyed by the voluntary disclosure of the contents of portions of the Report by the government. Indeed, I have determined in the first part of this Opinion that the privilege has been waived because of this disclosure.

The need for confidentiality then, which underscores the very essence of the privilege, is non-existent. As stated in *O'Connor, supra,* at 218:

> The central problem is a clash between highly valued interests (1) in disclosure that will contribute to full and fair determination of all facts relevant to the plaintiff's claims and (2) in confidentiality both to assure fairness to persons who have been required by law to engage in self-evaluation to promote the public interest in fair employment practices and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation. In this context neither an unqualified requirement of disclosure nor an unqualified privilege of nondisclosure of self-evaluation seems justified. *Id* at 218.

As a result of this voluntary breach of confidentiality there is no resultant clash of

interests as described in *O'Connor.* Moreover, the circumstances presented by virtue of this case demonstrate good cause requiring disclosure of those aspects of the Task Force Report that are relevant to Plaintiffs' causes of action, *Bredice, supra,* since both factual data not otherwise obtainable by the Plaintiff and evaluations of the Task Force are intertwined within the Report. Indeed, a specific need for this evidence is apparent where all the information relative to the actions of Rowe with regard to the May 14, 1961 incident is in the hands of a party Defendant. Disclosure, therefore, will contribute to a full and fair determination of all facts relevant to the Plaintiffs' claims.

Lastly, the interest in confidentiality is premised upon the prevention of an undue chilling effect which might result if disclosure is ordered. This case is unique since the Task Force Report concerns the actions of merely one informant, Rowe, and is, in effect, an historical account of that informant's activities and the manner in which the Bureau handled him. It is evident that the Report is thus limited in scope by the conclusion rendered by the Task Force at page 262:

> No conclusions regarding Rowe's participation in the death of Mrs. Liuzzo are included because of his pending trial in Alabama. The Task Force does not think any conclusions or recommendations are warranted regarding the handling of informants. The Rowe matter is now fourteen years behind the FBI and guidelines have now been promulgated. We view this matter as *sui generis.*

Additionally, the Report was prepared by a deliberative and investigative body which is now defunct. No chilling or inhibitive spectre can possibly be postulated that could result by disclosure of relevant portions of the Report.

In summary, I find that, not only has the "critical self-evaluation privilege" been waived, it has no application to this case.

The Defendants also assert that Rule 407 of the Federal Rules of Evidence precludes admission of the Report into evidence. Rule 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The Task Force Report is not a measure taken which is an indicia of a change that was made to make an event less likely to occur or to correct a previous condition. *See Patrick v. South Central Bell Telephone Company,* 641 F.2d 1192, 1195 (CA6 1980). In addition, the Report did not apparently cause any change in the manner in which the Bureau treated or acted upon information provided by an informant that a federal crime was going to be committed. By its terms then, Rule 407 is not called into question.

Indeed, the Report, if relevant and if construed as a subsequent remedial measure might be offered into evidence on the issue of feasibility since the Defendants contend that all appropriate feasible action was taken in this case. Finally, as recognized by the Advisory Committee on Proposed Rules, subsequent remedial measures are admissible to demonstrate the existence of duty; an issue which is critical to this litigation.

Based on the foregoing, Defendants cannot exclude the relevant portions of the Task Force Report based upon Rule 407 or the "critical self-evaluation privilege." The list of relevant pages previously referred to in this Opinion and by Judge Stewart shall, therefore, be disclosed to the Plaintiffs.

IT IS SO ORDERED.