491 F.2d 63
 6 ERC 1196, 160 U.S.App.D.C. 270, 4
Envtl. L. Rep. 20,160
 MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Appellant,
v.
Russell E. TRAIN, Administrator, Environmental Protection
Agency, Appellee.
MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Appellee,
v.
Russell E. TRAIN, Administrator, Environmental Protection
Agency, Appellant.
 Nos. 73-1443, 73-1444.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Nov. 5, 1973.
Decided Jan. 21, 1974.
 
 Robert L. Ackerly, Washington, D.C., with whom Charles A. O'Connor, III, Washington, D.C., was on the brief, for appellant in No. 73-1443 and appellee in No. 73-1444.
 Stephen F. Eilperin, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U.S.Atty., and Walter H. Fleischer, Atty., Dept. of Justice were on the brief for appellant in No. 73-1444 and appellee in No. 73-1443.
 John A. Terry and Robert S. Rankin, Jr., Asst. U.S. Attys., also entered upperarances for appellant in No. 73-1444 and appellee in No. 73-1443.
 Before TAMM, ROBINSON and WILKEY, Circuit Judges.
 WILKEY, Circuit Judge:
 
 
 1
 In an action brought under the Freedom of Information Act (FOIA)[1] Montrose Chemical Corporation is seeking to obtain two summaries of evidence developed at a hearing. The Administrator of the Environmental Protection Agency (EPA), the official for whom the summaries were prepared, then William Ruckelshaus, contends that the summaries are exempt from disclosure under the intra-agency memoranda exception of FOIA. Exemption 5 frees from the disclosure requirements 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'[2]
 
 
 2
 After in camera inspection of the documents the District Court granted Montrose summary judgment, but deleted certain portions of one document without explanation. On cross-appeals from the District Court order we reverse the decision below, and hold that both summaries are within the intra-agency memoranda exemption and hence not subject to forced disclosure.
 
 I. THE FACTUAL BACKGROUND
 
 3
 The two documents at issue here were prepared by staff of the EPA to summarize evidence adduced at EPA hearings on DDT, held pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).[3] The Consolidated DDT Proceedings, begun in August 1971 and concluded in March 1972, compiled a record of over 9200 pages. The Hearing Examiner[4] entered findings and conclusions that all DDT registrations were in compliance with FIFRA.
 
 
 4
 EPA regulations provide that the Judicial Officer review the record of the proceedings and render the final decision.[5] However, in view of the importance of the case, the Administrator withdrew from the Judicial Officer this delegation of authority[6] and himself, along with the Judicial Officer and two high level EPA attorneys, heard oral argument on 16 May 1972. In an order dated 2 June and issued 14 June 1972, Ruckelshaus directed the cancellation of the DDT registrations, thus reversing the Hearing Examiner.
 
 
 5
 In the course of his consideration of the case, Ruckelshaus sought the assistance of his staff. Specifically, he requested the three EPA attorneys who were to hear the oral argument with him, and who had not been connected with the EPA position at the hearings, to review the record made at the hearings, and to direct the preparation of analyses of the evidence.[7] Two documents which were prepared by the staff are at issue here: one entitled 'Analysis of Risks Attributed to DDT,' and the other 'Summary and Analysis of Evidence of Benefits.' These documents were to be used only to assist Ruckelshaus in his study of the record,[8] and were based wholly on evidence in the record of the hearings.[9]
 
 
 6
 While Montrose contends that the summaries are factual and should be disclosed since a decision should be based on a public record, the EPA contends that the summaries are intra-agency memoranda, prepared as part of the deliberative process, exempt from disclosure under exemption 5. The EPA argues that the summaries contain no facts not already in the public record, and should remain confidential because of the need for full and free exchange of ideas in the decision-making process.
 
 
 7
 The District Court holding and rationale were put succinctly: 'After consideration of the documents in camera, the Court finds that all or part of the documents constitute summaries of testimony, summaries of the record, conclusions of witnesses and other factual information and are not exempt from disclosure as intra-agency memoranda.'[10] Without explanation, the District Court exempted from disclosure certain identified portions of one document.[11] The District Court stayed its order pending this appeal.
 
 II. ANALYSIS OF EXEMPTION 5
 
 8
 The issue before the court, whether a staff-prepared summary of factual evidence on the record is within exemption 5 of FOIA, has not been adjudicated previously. However, exemtion 5 itself has received careful attention by the Supreme Court, this court, and other federal courts. We first review the seminal case, Environmental Protection Agency v. Mink,[12] and other exemption 5 cases, and then we apply the law to the documents at issue here.
 
 
 9
 Exemption 5 must, of course, be interpreted in the context of the Freedom of Information Act as a whole. The broad goal of FOIA was to make available to the public a wide range of information in the Government's control.[13] Notwithstanding the general goal of disclosure, it was recognized that something less than 100% Disclosure of all government operations was was only practical and reasonable. Hence Congress attempted to establish standards for the necessary departure from the general rule of disclosure by creating nine explicit exemptions.[14] These exemptions are exclusive,[15] and are to be interpreted narrowly.[16]
 
 
 10
 In Environmental Protection Agency v. Mink, the Supreme Court considered the legislative history of exemption 5 and concluded that 'Congress intended to incorporate generally the recognized rule that 'confidential intra-agency advisory opinions . . . are privileged from inspection."[17] To protect the deliberative or policy-making processes of government, such an exemption was necessary. It was feared that, if internal agency discussions and memoranda were publicized, the Government would be forced to 'operate in a fishbowl,'[18] thus inevitably inhibiting frank discussion essential to the development of carefully formulated, coherent agency policy.[19]
 
 
 11
 Some limitations were essential in interpreting exemption 5 to prevent the exception from engulfing the rule. One such limitation adopted by the Mink Court, was the dichotomy between factual and deliberative matters. Wnen an intra-agency memorandum consisted of purely factual material, or such factual portions were easily severable from the deliberative portions, disclosure would be required.[20] Such an interpretation, it was thought, would not be 'injurious to the consultative functions of government that the privilege of nondisclosure protects,'[21] and would be also consonant with the intent of Congress.
 
 
 12
 This distinction drawn in Mink between factual and deliberative material was earlier suggested by this court in Soucie v. David.[22] In a passage which anticipates the current controversy, Chief Judge Bazelon wrote for the court that exemption 5
 
 
 13
 was intended to encourage the free exchange of ideas during the process of deliberation and policy-making; accordingly, it has been held to protect internal communications consisting of advice, recommendations, opinions, and other material reflecting deliberative or policy-making processes, but not purely factual or investigatory reports. Factual information may be protected only if it is inextricably intertwined with policy-making processes. Thus, for example, the exemption might include a factual report prepared in response to specific questions of an executive officer, because its disclosure would expose his deliberative processes to undue public scrutiny. But courts must beware of 'the inevitable temptation of a governmental litigant to give (this exemption) an expansive interpretation in relation to the particular records in issue.'[23]
 
 
 14
 This distinction was not decisive in Soucie, because the District Court had mistakenly thought FOIA inapplicable to the governmental body involved, and a remand was necessary to develop an appropriate record.[24] We did this accompanied by the statement that, on the basis of the record at the time, there was no reason to believe that disclosure of the factual information in the reports there involved would unduly expose the decisional process.[25]
 
 
 15
 Other cases in this Circuit have also recognized a distinction between purely factual and deliberative reports. Thus, for example, in Bristol Myers Co. v. FTC, we noted that
 
 
 16
 Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.'[26]
 
 
 17
 In none of these cases, however, was the distinction fully elaborated.[27]
 
 
 18
 III. THE FACTUAL/ DELIBERATIVE TEST IN LIGHT OF THE PRESENT CASE
 
 
 19
 In the case at bar this factual versus deliberative distinction is inadequate to resolve the difficult question whether the factual summaries should be exempt from disclosure. The difficulty arises because of the nature of the documents. It is agreed that the summaries in question are in large part compilations of facts introduced in evidence at the hearings, and on the public record.[28] Montrose contends that such factual materials must be disclosed under the prior decisions discussed above. In contrast, EPA contends that the mere compilation of a summary of the evidence on record, performed by staff members for the use of the Administrator in formulating his decision and final order, is itself a part of the internal deliberative process which should be kept confidential and within the agency. What will be disclosed here if the District Judge's order is upheld, argues the EPA,
 
 
 20
 are not 'facts' not yet possessed by Montrose Chemical Corporation, but rather the judgmental evaluation and condensation of the more than 10,000 pages of facts from which the Administrator gained an overview of the record in order to assist his decisionmaking. The only new 'information' which disclosure of these summaries would provide Montrose concerns the mental processes of the agency-- a process which Montrose is not entitled to probe.[29]
 
 
 21
 This statement by EPA hits the heart of the issue here: Can Montrose use the FOIA to discover what factual information the Administrator's aides cited, discarded, compared, evaluated, and analyzed to assist the Administrator in formulating his decision? Or would such discovery be an improper probing of the mental processes behind a decision of an agency? These questions must be considered in the light of the statutory provision of FIFRA, which requires the Administrator's decision cancelling pesticide registrations to be 'based only on substantial evidence of record.'[30] Of equal importance, it must also be borne in mind that Ruckelshaus did render a 50-page decision, citing voluminous facts and statistics, and explained in detail the rationale of his, the Administrator's, final decision. The world was not left in doubt as to either the factual basis or the reasoning behind the final product.
 
 
 22
 Our solution rests on the interpretation of the purpose of exemption 5. If the exemption is intended to protect only deliberative materials, then a factual summary of evidence on the record would not be exempt from disclosure. But if the exemption is to be interpreted to protect the agency's deliberative process, then a factual summary prepared to aid an administrator in resolution of a difficult, complex question would be within the scope of the exemption.
 
 
 23
 The EPA assistants here were exercising their judgment as to what record evidence would be important to the Administrator in making his decision regarding the DDT registrations. Even if they cited portions of the evidence verbatim, the assistants were making an evaluation of the relative significance of the facts recited in the record; separating the pertinent from the impertinent is a judgmental process, sometimes of the highest order; no one can make a selection of evidence without exercising some kind of judgment, unless he is simply making a random selection.
 
 
 24
 Ruckelshaus' use of his assistants to winnow down the evidence was similar in many ways to a judge's use of his law clerk to sift through the report of a special master or other lengthy materials in the record. In both situations, when faced with a voluminous record, the decision-maker may wisely utilize his assistants to help him determine what materials will be significant in reaching a proper decision.
 
 
 25
 To probe the summaries of record evidence would be the same as probing the decision-making process itself. To require disclosure of the summaries would result in publication of the evaluation and analysis of the multitudinous facts made by the Administrator's aides and in turn studied by him in making his decision. Whether he weighed the correct factors, whether his judgmental scales were finely adjusted and delicately operated, disappointed litigants may not probe his deliberative process.[31]
 
 
 26
 The bar against probing the mental processes of an executive branch decision-maker is not recently derived from exemption 5 of FOIA. Indeed, the courts have long recognized the sanctity of the decision-making process, absent discernible likely gross abuse. Perhaps the most influential cases in explicating this area of the law have been the Morgan[32] decisions of the 1930's. In this litigation series, an order of the Secretary of Agriculture establishing maximum rates to be charged by market agencies at the Kansas City Stockyards was challenged by the market agencies on a variety of grounds. In Morgan I, where the nature of the hearing was at issue, Chief Justice Hughes indicated that in an administrative ratemaking proceeding, as in a judicial proceeding, 'the one who decides must hear.'[33] The decision-maker cannot be one who has neither considered the evidence nor the argument. But, as Chief Justice Hughes continued, this rule does not preclude the wise use of assistants in the administrative process. He specifically suggested that evidence could be taken by a hearing examiner, and this evidence could then be 'sifted and analyzed by competent subordinates'[34] of the administrator.
 
 
 27
 Morgan II involved in part the question of court review of the Secretary of Agriculture's decision-making process. Although the Court, again per Chief Justice Hughes, held that a full hearing had not been given, it noted that 'it was not the function of the court to probe the mental processes of the Secretary in reaching his conclusions if he gave the hearing which the law required.'[35] This statement was reaffirmed by the Court in Morgan IV, per Justice Frankfurter.[36] Morgan IV also held that examination of the Secretary concerning the process by which he decided the rate issue, including questions on the manner and extent of his review of the record and his discussion with assistants, was improper and should not have occurred. Justice Frankfurter analogized the position of the Secretary to that of a judge, and indicated that the integrity of both the administrative process and the judicial process must be respected; scrutiny of either process was not to be permitted, absent extraordinary circumstances.[37]
 
 
 28
 The protection of the deliberative process of agency decision-makers, stressed in the Morgan litigation, has also been reflected in cases under FOIA. This Circuit and others have emphasized that the purpose of exemption 5 is not simply to encourage frank intra-agency discussion of policy, but also to ensure that the mental processes of decision-makers are not subject to public scrutiny.[38] And Mink reaffirms that the consultative functions are to be protected by exemption 5.[39]
 
 
 29
 The use of the staff-prepared summaries by the Administrator does not conflict with his duty to decide the case on substantial evidence of record. Ruckelshaus has sworn in his affidavit that the summaries contain only evidence on the public record and analyses thereof.[40] He was not using the summaries to obtain new facts not on the record. Thus, the litigants and the public have already had full access to the record on which the decision was made, and what they are now seeking is the analysis of risks and benefits attributed to DDT made by the Administrator's aides to assist him in his ultimate decision. In effect, the litigants seek to know what advice as to importance and unimportance of facts the Administrator received, and how much of it he accepted. Such information is most emphatically not part of the public record. To argue, then, that the Administrator has not decided on a public record ignores the real question of what is the public record.
 
 
 30
 Furthermore, this case is distinctly different from other FOIA cases where a decision-maker has referred to an intra-agency memorandum as a basis for his decision. In such cases this court has required disclosure of the memoranda, for, once adopted as a rationale for a decision, the memorandum becomes part of the public record.[41] Here the Administrator at no time refers to any evidence not on the record.
 
 
 31
 Similarly, our case here is to be distinguished from a situation in which the only place certain facts are to be found is in the administrative assistants' memoranda. Here all the facts are in the public record. What is not in, and should not be in, the public record is the administrative assistants' evaluation and selection of certain facts from the 9200-page public record.[42] If we confront a case in which some facts are only found in the aide's memorandum, then the principles of Vaughn v. Rosen[43] and Cuneo v. Schlesinger[44] would be applicable, i.e., the Government would bear the burden of putting the record in such shape that all facts are in the public record, separate from analysis which need not be disclosed.
 
 
 32
 It is possible that the assistants in winnowing down the record may have made errors of inclusion or excluion, or even gross distortions of fact. But these possibilities reflect human errors and misjudgments which are part of the deliberative process. The fact that errors may creep in and mislead the final decision-maker merely suggests that there may be errors in the deliberative or adjudicatory process; it does not mean that the preliminary studies by the staff are separate from the adjudicatory process or should be classified as part of the public record. The work of the assistants in separating the wheat from the chaff is surely just as much part of the deliberative process as is the later milling by running the grist through the mind of the administrator. And that some wheat is thrown away and some chaff included with the grain does not alter the nature of the process, even though it reflects error on the part of the assistants.
 
 IV. CONCLUSION
 
 33
 Exemption 5 was intended to protect not simply deliberative material, but also the deliberative process of agencies. When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process, and is exempt from disclosure under exemption 5 of FOIA.
 
 
 34
 In reaching the conclusion that the documents here are exempt from disclosure, we do not reject the factual/deliberative test adopted in previous cases. Instead, we develop that test to recognize that in some cases selection of facts or summaries may reflect a deliberative process which exemption 5 was intended to shelter. Where the factual material is not already in the public domain, a different result might be reached. Here, however, where all facts are already on the record, and where the summaries were used simply as an aid in decision-making, the exemption applies; the order of the District Court requiring disclosure of parts of the summaries it therefore
 
 
 35
 Reversed.
 
 
 
 [1]
 5 U.S.C. 552 (1970)
 
 
 [2]
 5 U.S.C. 552(b)(5)
 
 
 [3]
 7 U.S.C. 135-135k (1970). FIFRA was later amended by the Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. 136 (Supp. II, 1972). Under FIFRA, registrations of pesticides such as DDT were to be cancelled if injurious to man and his environment. This court considered the substantive aspects of the cancellation of the DDT registrations by the Administrator in Environmental Defense Fund, et al. v. Environmental Protection Agency, U.S.App.D.C. , 489 F.2d 1247 (1973)
 
 
 [4]
 The Hearing Examiner is now officially called an Administrative Law Judge. See 37 Fed.Reg. 16787 (1972)
 
 
 [5]
 See Brief for Appellant Montrose at 3-4
 
 
 [6]
 See Brief for Cross-Appellant Train at 22
 
 
 [7]
 Id. at 3
 
 
 [8]
 Affidavit of William Ruckelshaus PP5b, 5e, in Appendix to Briefs at 26-27
 
 
 [9]
 Affidavit of William Ruckelshaus P10, in Appendix at 29. Mr. Ruckelshaus also stated that he considered no evidence not on the record. Affidavit P8, in Appendix at 28
 
 
 [10]
 Appendix at 45
 
 
 [11]
 The District Judge ordered exempt from disclosure the following portions of the document entitled 'Analysis of Risks Attributed to DDT.'
 
 
 [1]
 All handwritten notes in the margins 2. The sections headed 'Comparative Expertise,' 'Relative Weight,' 'Assessment,' 'Weight of Evidence,' and 'Total Evaluation.' See Appendix at 45-46
 
 
 [12]
 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)
 
 
 [13]
 5 U.S.C. 552(a). See generally EPA v. Mink, 410 U.S. at 79-80, 93 S.Ct. 827, 35 L.Ed.2d 119
 
 
 [14]
 5 U.S.C. 552(b)
 
 
 [15]
 5 U.S.C. 552(c). It is arguable that a court may, on equitable grounds, decline to require disclosure of records not covered by a specific exemption of the Act. Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 767, 787, 791, 802 (1967). Soucie v. David, 145 U.S.App.D.C. 144, 160, 448 F.2d 1067, 1083 (1971) (Wilkey, J., concurring opinion). But see Getman v. NLRB, 146 U.S.App.D.C. 209, 217, 450 F.2d 670, 678 (1971), where Judge Wright held for the court that such equitable discretion does not exist. That view was also supported in dicta by the majority in Soucie, 145 U.S.App.D.C. at 154, 448 F.2d at 1077
 
 
 [16]
 See EPA v. Mink, 410 U.S. at 79, 89, 93 S.Ct. 827
 
 
 [17]
 410 U.St at 86, 93 S.Ct. at 835, quoting Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 946, 141 Ct.Cl. 38, 49 (1958) (Reed, J.)
 
 
 [18]
 This often-quoted phrase seems to have first appeared in this context in S.Rep.No. 813, 89th Cong., 1st Sess. at 9 (1965)
 
 
 [19]
 Similar expressions are found in virtually all exemption 5 cases. See, e.g., International Paper Co. v. FPC, 438 F.2d 1349, 1358-1359 (2d Cir.), cert. denied, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971); Ackerly v. Ley, 137 U.S.App.D.C. 133, 138, 420 F.2d 1336, 1341 (1969); American Mail Line Ltd. v. Gulick, 133 U.S.App.D.C. 382, 389, 411 F.2d 696, 703 (1969)
 
 
 [20]
 Justice White wrote for the Court,
 memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government.
 410 U.S. at 87-88, 93 S.Ct. at 836. Furthermore, he stated that exemption 5 'requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other.' Id. at 89, 93 S.Ct. at 837.
 
 
 [21]
 Id. at 87, 93 S.Ct. at 836, quoting Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. at 946, 141 Ct.Cl. at 49
 
 
 [22]
 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971)
 
 
 [23]
 145 U.S.App.D.C. at 154-155, 448 F.2d at 1077-1078
 
 
 [24]
 The material at issue in Soucie was a report known as the Garwin Report, prepared by a panel of experts for the Office of Science and Technology, a part of the Executive Office of the President. The report evaluated the Federal Government's program for depvelopment of a supersonic transport aircraft (SST). In a suit to obtain disclosure of the report, the District Court held that the Office of Science and Technology was not an 'agency' for purposes of FOIA, and that the report was protected from disclosure by the doctrine of executive privilege. This court on appeal held that OST was an agency, and the District Court erred in dismissing the suit. A remand to consider specific FOIA exemptions was ordered. 145 U.S.App.D.C. at 147-148, 448 F.2d at 1070-1071
 
 
 [25]
 145 U.S.App.D.C. at 155, 448 F.2d at 1078
 
 
 [26]
 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970), quoting Ackerly v. Ley, 137 U.S.App.D.C. 133, 138, 420 F.2d 1336, 1341 (1969)
 
 
 [27]
 See, e.g., Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 243, 450 F.2d 698, 704 (1971)
 
 
 [28]
 See, e.g., Brief for Appellant at 8; Brief for Cross-Appellant at 20-21
 
 
 [29]
 Brief for Cross-Appellant at 21
 
 
 [30]
 7 U.S.C. 135b(c) (1970). See also 7 U.S.C. 136d(d) (Supp. II, 1972)
 
 
 [31]
 'The basis of Exemption (5), as of the privilege which antedated it, is the free and uninhibited exchange and communication of opinions, ideas, and points of view-- a process as essential to the wise functioning of a big government as it is to any organized human effort. In the Federal Establishment, as in General Motors or any other hierarchical giant, there are enough incentives as it is for playing it safe and listing with the wind; Congress clearly did not propose to add to them the threat of cross-examination in a public tribunal.' McGowan, J., in Ackerly v. Ley, 137 U.S.App.D.C. 133, 138, 420 F.2d 1336, 1341 (1969)
 
 
 [32]
 Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) (Morgan I); 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938) (Morgan II); 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939) (Morgan III); 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (Morgan IV)
 
 
 [33]
 298 U.S. at 481, 56 S.Ct. at 912
 
 
 [34]
 Ibid. See also Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C. 399, 407, 379 F.2d 453, 461 (1967), which also recognizes that the use of subordinates to sift the record may be appopriate. Braniff was not a FOIA case, although its administrative law principles are applicable here
 
 
 [35]
 304 U.S. at 18, 58 S.Ct. at 776
 
 
 [36]
 313 U.S. at 422, 61 S.Ct 999, 85 L.Ed. 1429
 
 
 [37]
 The Morgan cases were relied on in another non-FOIA case with special relevance to the case at bar. Norris & Hirshberg, Inc. v. SEC, 82 U.S.App.D.C. 32, 163 F.2d 689 (1947), cert. denied, 333 U.S. 867, 68 S.Ct. 788, 92 L.Ed. 1145 (1948), involved in part a claim that the SEC relied on a summary of the evidence in a case before the Commission which should have been filed in the record. In considering this claim, the court noted that the agency
 may utilize the services of subordinates to sift and analyze the evidence received by the trial examiner and subsequent use by the gaency of a written resume of that sifting and analyzing is a part of its internal decisional process which may not be probed on appeal.
 Id. at 693.
 Furthermore, the court indicated that it would be neither necessary nor proper for the summary to be made part of the record of the case if the summary was only used as an aid in interpreting the record.
 
 
 [38]
 See International Paper Co. v. FPC, 438 F.2d 1349, 1358-1359 (2d Cir.), cert. denied, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971). See also, Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 245-246, 450 F.2d 698, 706-707 (1971); Soucie v. David, 145 U.S.App.D.C. at 155-156, 448 F.2d at 1077-1078. Although the factual circumstances in these cases differ from ours, these cases do suggest that it is the deliberative process which is to be protected by exemption 5
 
 
 [39]
 410 U.S. at 87, 93 S.Ct. 827, 35 L.Ed.2d 119. Cf. id. at 92-94, 93 S.Ct. 827, 35 L.Ed.2d 119. It is interesting to note that the Court in Mink refers to a non-FOIA case, Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38, (1958), as establishing a principle of protection for the deliberative process. Justice Reed wrote in Kaiser that
 The document sought here was a part of the administrative reasoning process that reached the conclusion embodied in the contracts with Kaiser and Reynolds. The objective facts, such as the cost, condition, efficiency, terms and suitability are otherwise available.
 Id. at 946. Furthermore, he stated that 'the demand for this document seeks to lay bare the discussion and methods of reasoning of public officials . . .. This goes beyond the disclosure of primary facts upon which conclusions are based.' Id. at 946-947.
 
 
 [40]
 See note 9 supra
 
 
 [41]
 American Mail Line v. Gulick, 133 U.S.App.D.C. 382, 389, 411 F.2d 696, 703 (1969). See also Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971)
 
 
 [42]
 The present writer's concurring opinion in Soucie v. David, 145 U.S.App.D.C. 144, 162, 448 F.2d 1067, 1085 (1971), suggests that where an alternative source of the facts is available to the public, what the litigants may be seeking are not really facts, but evaluation of the facts or advice, which should not be subject to disclosure. This rationale is similarly applicable here
 
 
 [43]
 157 U.S.App.D.C. 340, 484 F.2d 820 (1973)
 
 
 [44]
 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973)