**PLAYBOY ENTERPRISES, INCORPORATED, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

Civ. A. No. 80–1172.

United States District Court, District of Columbia.

March 31, 1981.

Joe R. Reeder, Timothy J. May, Charles Mason, Washington, D. C., for plaintiff.

Karen Czapanskiy, U. S. Dept. of Justice, Office of Privacy & Information Appeals, Washington, D. C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This action, brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA), is before the Court upon cross-motions for summary judgment filed by the parties. The plaintiff Playboy Enterprises, Inc. has sought, and the defendant[1] United States Department of Justice has resisted, disclosure of the Gary Thomas Rowe, Jr. Task Force Report (Report). For the reasons more fully set forth below, the Court will deny the defendant's motion for summary judgment, grant the plaintiff's motion for summary judgment, and order

---

1. The complaint also names Benjamin Civiletti, as a defendant. The plaintiff concedes that Mr. Civiletti is not a proper party to this action.

the release to plaintiff of certain portions of the Report.

*Background of the Litigation*

In July 1978, Senators Edward M. Kennedy and James Abourezk expressed to the Justice Department an interest in receiving a report concerning allegations that Gary Thomas Rowe, Jr. had committed violent crimes while serving as an FBI informant within the Ku Klux Klan in Alabama during the early 1960's.[2] The 302 page document at issue in this case was prepared by a task force, convened within the Office of Professional Responsibility of the Department of Justice and at the direction of then Attorney General Griffin Bell, whose function it was to investigate and to review the activities of Rowe and the FBI's handling of him as an informant. Specifically, the task force of four attorneys was created to investigate and to report on the following:[3]

(1) Whether FBI personnel acted improperly in handling Mr. Gary Thomas Rowe while he served as a Bureau informant within the United Klans of America (UKA);

(2) Whether Civil Rights Division attorneys, who tried *United States v. Eaton*, et al. (the federal civil rights case arising out of the highway murder of Mrs. Viola Liuzzo), were aware of Mr. Rowe's alleged unreliability or suspected he was unreliable; and

(3) Whether there is any evidence to substantiate the allegation that Mr. Rowe was responsible for the death of Mrs. Viola Liuzzo (to the extent this is possible without prejudicing the rights of Mr. Rowe or the State of Alabama in view of Mr. Rowe's recent state indictment for the murder).

Through an affidavit submitted by defendant in support of its motion, the defendant relates that between the end of October 1978 to the end of January 1979, the task force reviewed all of the pertinent portions of nearly 800 volumes of FBI records located in Washington, D.C., Birmingham, Mobile, Atlanta and Savannah. The next two months were spent conducting 64 interviews of present and former FBI Headquarters officials, FBI agents, Klansmen, FBI informants (including Gary Thomas Rowe), state and local law enforcement officials of Alabama, Department attorneys, and other individuals. The Report was submitted to the Attorney General in July 1979.

In March 1980, the plaintiff sought access to the Report by filing with defendant a FOIA request. This request, as well as an appeal, was denied. The defendant asserts the Report is exempt from disclosure in its entirety on the basis of Exemptions 2, 3, 5, 6, and 7(A–D) of the FOIA, 5 U.S.C. §§ 552(b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(A–D). Subsequent to the filing of the complaint in this case, defendant filed the first of two affidavits by Michael Shaheen, Counsel on Professional Responsibility. Pursuant to court order, a second affidavit by Michael Shaheen was filed, followed by defendant's motion for summary judgment accompanied by an affidavit of then-Attorney General Benjamin Civiletti. The plaintiff filed its cross-motion for summary judgment thereafter.

In its motion for summary judgment the defendant contends that, notwithstanding other FOIA Exemptions which apply to the Report, the Report is exempt from disclosure in its entirety pursuant to Exemption 5[4] of the FOIA which protects from disclo-

---

**2.** In July 1978 the *New York Times* published articles containing these allegations. In addition, the ABC television network presented a documentary program suggesting that Rowe fired the bullet which killed Viola Liuzzo, a civil rights worker shot in March 1965 while travelling an Alabama highway, following the historic Selma to Montgomery freedom march.

**3.** The focus of the task force is set forth on pages 2–3 of the Report. Pages 1–3, and limited portions of an appendix to the Report, are

the only portions that have been released by defendant.

**4.** Exemption 5 of the FOIA 5 U.S.C. § 552(b)(5), protects from mandatory disclosure matters that are:

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

■■■■■■■■■■

sure the "deliberative process" of an agency. At a hearing on the cross-motions for summary judgment and by subsequent Order,[5] this Court directed defendant to submit for *in camera* review, a detailed affidavit describing more fully the nature of the deliberative process sought to be protected and the applicability of Exemption 5 to the document.

The Court has considered carefully the memoranda of points and authorities in support of and in opposition to the cross-motions for summary judgment, the defendant's affidavits on the record, the *in camera* affidavit, the arguments of counsel for the parties and the entire record[6] before the Court. The Court finds that Exemption 5 is not properly invoked to withhold the entire Report. The Court also finds that Exemptions 2 and 6 do not apply to any portions of the Report. The inapplicability of these Exemptions, as well as the applicability of other claimed exemptions to portions of the Report, will be discussed *seriatim.*

*Exemption 5*

■■ Exemption 5 of the Freedom of Information Act exempts from mandatory disclosure:

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

5 U.S.C. § 552(b)(5). This exemption incorporates into the FOIA certain principles of civil discovery law, and "it is reasonable to construe Exemption 5 to exempt those documents, and only those documents, normally privileged in the civil discovery context." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S.

132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). However, the situations are not identical,[7] and "at best the discovery rules can only be applied under Exemption 5 by way of rough analogies," *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). It appears to be undisputed between the parties, and the Court is persuaded by the affidavits, that the Report qualifies as an "intra-agency memorandum" or document. The next inquiry then is whether the Report as an intra-agency memorandum falls within that class of documents protected by Exemption 5. As was stated most recently by the Court of Appeals in this Circuit:

> The courts have recognized that Exemption 5 protects as a general rule, materials which would be protected under the attorney-client privilege, *Mead Data Central, Inc.,* 184 U.S.App.D.C. at 360–363, 566 F.2d at 252–255; the attorney work product privilege, *N.L.R.B. v. Sears,* 421 U.S. at 154, 95 S.Ct. at 1518; *Bristol-Myers Co. v. F. T. C.,* 194 U.S.App.D.C. 99, 598 F.2d 18 (1978); or the executive "deliberative process" privilege, *EPA v. Mink,* 410 U.S. at 85–90, 93 S.Ct. at 835–837, *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 523 F.2d 1136 (1975) (Vaughn II).

*Taxation With Representation Fund v. Internal Revenue Service,* 646 F.2d 666, 676 (D.C.Cir.1981), citing *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). Since the defendant Department of Justice relies exclusively on the deliberative process privilege, it is the only privilege the Court will consider.

---

**5.** Memorandum Opinion and Order dated November 14, 1980.

**6.** The Court has permitted the filing of an *amici curiae* brief on behalf of the Center for Constitutional Rights and several other organizations and individuals. The brief argues the public interest in the release of the Report.

**7.** The defendant has submitted two recent opinions from cases in which the Gary Thomas Rowe, Jr. Task Force Report was denied to plaintiffs through discovery. *Liuzzo, et al. v. United States,* 508 F.Supp. 923 (E.D.Mich.1981) and *Peck v. United States,* 88 F.R.D. 65 (S.D.N.Y.1980). The Court has carefully reviewed

these opinions but finds them to be of no substantial value to the instant case. In *Peck v. United States,* the court based its opinion, at least in part, on the availability to plaintiffs of most of the objective facts contained in the Report from documents in plaintiff's possession. The court in *Liuzzo, et al. v. United States,* gave deference to the affidavit of the Attorney General. Because this Court must conduct a *de novo* review of an agency's decision, without regard to the needs of the requestor, a FOIA case presents issues differing from those presented in the discovery context.

■ The deliberative process privilege protects the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. *Jordan v. United States Department of Justice*, 192 U.S.App.D.C. 144, 163, 591 F.2d 753, 772 (D.C.Cir.1978) (*en banc*) (citations omitted). As stated by the Court of Appeals in *Jordan*,

There are essentially three policy bases for the privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And, third, it protects the integrity of the decisionmaking process itself by confirming that officials should be judged by what they decided, not for matters they considered before making up their minds.

*Jordan v. United States Department of Justice*, 192 U.S.App.D.C. at 163–64, 591 F.2d at 773. (citations omitted). The Court in *Jordan* stated two prerequisites which must be met by a document for it to be covered by Exemption 5.

First, the document must be 'pre-decisional'. The privilege protects only communications between subordinates and superiors that are actually *antecedent to the adoption of an agency policy* .... The second prerequisite to privileged status is that the communication must be 'deliberative', that is, it must actually be related to the process by which policies are formulated. (Emphasis in the original).

*Jordan v. United States Department of Justice*, 192 U.S.App.D.C. at 165, 591 F.2d at 774. The Court noted the language in *Vaughn v. Rosen* (Vaughn II), 173 U.S.App.

D.C. 187, 194–95, 523 F.2d 1136, 1143–44 (1975) to the effect that:

[I]t is not enough to assert, in the context of Exemption 5, that a document is used by a decisionmaker in the determination of policy.... Rather, to come within the privilege, and thus within Exemption 5, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take—of the deliberative process—by which the decision itself is made.

■ The Court is satisfied that the Report sought in the instant case is "pre-decisional" to the extent that it was used by the Attorney General as a basis for his report to Senator Kennedy.[8] However, as the cases have taught us, this determination is not enough to find the Report properly is withheld pursuant to Exemption 5.

The defendant vigorously asserts that the entire Report is deliberative in nature arguing that it contains the results of analysis, evaluation, comparison, and selection done by the task force, and these tasks are at the heart of the deliberative process. Also, it advances, that the document is deliberative in nature is clear from the mandate given the task force which required not only that difficult and sensitive issues be investigated but also that recommendations be formulated with respect to possible actions which could be taken by the Department. The defendant is cognizant of the fact that the statute provides for the release of any reasonably segregable portions of a document, after deletions of the portions which are exempt under this subsection. 5 U.S.C. § 552(b). As applied to Exemption 5 and the deliberative process, the Supreme Court has stated that the exemption "requires different treatment for materials reflecting

8. By letter dated December 15, 1980, former Attorney General Benjamin R. Civiletti transmitted to Senator Kennedy a document entitled "Summary of Results of the Department of Justice Task Force Investigation on Gary Thomas Rowe, Jr." The former Attorney General stated his intention to release the summary to the public on that date.

deliberative, or policymaking processes on the one hand, and purely factual investigative matters on the other". *EPA v. Mink*, 410 U.S. at 89, 93 S.Ct. at 837. However, the cases have held that Exemption 5 is intended to protect the deliberative process of government and not just deliberative material, *Mead Data Central, Inc. v. United States Department of Air Force*, 184 U.S. App.D.C. 350, 364, 566 F.2d 242, 256. In *Montrose Chemical Corp. v. Train*, 160 U.S. App.D.C. 270, 278, 491 F.2d 63, 71, (1974) the Court found:

> When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process, and is exempt from disclosure under Exemption 5 of the FOIA.

The Court in *Montrose* also stated that, "the work of assistants in separating the wheat from the chaff is surely just as much part of the deliberative process as is the later milling by running the grist through the mind of the administrator". *Id.*, 160 U.S.App.D.C. at 278, 491 F.2d at 71.

Relying on the above-cited cases, the defendant maintains there are two aspects of the deliberative process reflected in the Report: gathering information and formulating recommendations. The gathering of information, defendant asserts, is protected so that the decisionmaker will be assured of receiving all the relevant and necessary information in all appropriate cases. The deliberative process in this instance, it is contended, also includes the analysis and evaluation of factual data in the process of making conclusions and recommendations. Thus, defendant claims, to the extent the Report includes factual accounts of any of the underlying events, these accounts are not simply factual; they are instead the product of selection, interpretation, and integration conducted by the task force. Since the Report intertwines information gathered from all of the sources in such a way that the segregation of portions would be impossible without revealing the deliberative process, the defendant maintains the entire Report is exempt from disclosure pursuant to Exemption 5 of the FOIA.

██ Finding the affidavits submitted by defendant failed to describe adequately [9] the nature of the deliberative process sought to be protected, and taking in good faith, the assertion that nothing further could be provided on the public record without revealing that for which the exemption was invoked, the Court ordered defendant to submit for *in camera* review, a detailed affidavit more fully describing the applicability of Exemption 5 to the entire report. The deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process, and the agency has the burden of establishing what deliberative process is involved, and the role played by the document in the course of that process. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d at 867–868. The *in camera* affidavit explains the process by which the task force made certain factual findings, and includes a few pages of the contested Report itself. After careful and considered review of defendant's *in camera* submission, the Court now understands the defendant's arguments, but disagrees that Exemption 5 can be used to withhold the entire Report.

██ As is described in the first Shaheen affidavit at paragraph 14 and detailed in the *in camera* affidavit, the Report contains certain facts which provide an overview of the historical context in which the FBI and its informants operated during the early 1960's in the South. As stated by Mr. Shaheen, the historical context is included "to provide the Attorney General with a background knowledge of the pressures which operated on, and the limitations which applied to, federal law enforcement officers in that region during that time period." While it is true that factual segments are protected from disclosures as not

---

9. Conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases. *Coastal States*

*Gas Corp. v. Department of Energy*, 617 F.2d at 861.

being purely factual if the manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are inextricably intertwined with the policy-making process, *Ryan v. Department of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980), the "history" included in the Report neither reveals the deliberative process engaged in by the task force in ascertaining this historical context, nor is it intertwined with the policy-making process of the decisionmaker. It must be emphasized that it was the Attorney General who had decisionmaking or policymaking authority in this case, and not the task force. The mission of the task force was to investigate the facts surrounding certain events. The Report was then submitted to the Attorney General who ultimately reached certain conclusions based upon the results of the factual investigation.

In keeping with its mission the task force investigated the facts surrounding the murder of Mrs. Viola Liuzzo, and presented to the Attorney General certain facts concerning her death. Naturally, in the course of compiling these facts the task force was called upon to make certain credibility determinations and to weigh specific bits of evidence against others. However, from the pages of the Report submitted *in camera* the Court cannot determine whose testimony was credited or what evidence was accepted as true, in the process of deriving the factual contents of the Report. Hence, the deliberative process of the task force is not revealed from the factual segments contained in the Report. These factual materials are not intertwined with opinions and advice, and are not entitled to protection under Exemption 5.

The case presented here is unlike that in *Montrose Chemical Corp. v. Train.* In *Montrose*, the part of the deliberative process protected was the *evaluative* summary of the whole vast record made on the specific direction of an administrator by his aides in order to assist him in making a decision. The Court in *Montrose* specifically and importantly found that the record on which the summary was based was within the public domain. Thus "to probe the

summaries of record evidence would be the same as probing the decisionmaking process itself", *Id.*, 160 U.S.App.D.C. at 275, 491 F.2d at 68, since it could be easily determined from the summaries what weight was given to certain evidence. Nor is the Report here akin to those documents held to be protected by Exemption 5 in *Mead Data Central, Inc. v. United States Department of Air Force.* In that case the Court concluded that discussions among agency personnel about the relative merits of various positions which might be adopted in contract negotiations were as much a part of the deliberative process as the actual recommendations and advice which they agreed upon. *Id.*, 184 U.S.App.D.C. at 365, 566 F.2d at 257. The Court credits defendant's assertions that the staff of the task force conferred among themselves in order to arrive at certain factual determinations, but it is the resulting facts contained in the Report and which were presented to the Attorney General that must be disclosed under the FOIA, rather than the actual deliberations among the task force.

The Court finds the factual contents of the Report to be similar to portions of documents held not exempt under Exemption 5, in *Vaughn v. Rosen* (Vaughn II), 173 U.S. App.D.C. 187, 523 F.2d 1136 (1975). In *Vaughn*, the appellant sought from the Civil Service Commission certain reports entitled "Evaluations of Personnel Management", which were the Commission's evaluations of the way the agencies' managers and supervisors were carrying out their personnel management responsibilities. While the district court did find certain portions of the report, those consisting of advice and recommendations to the agencies as to how to improve their personnel programs, to be protected from disclosure under Exemption 5, the court also found that "evaluations and factual data are not solely, or even largely, a part of the pre-decisional, or consultative or deliberative process, but rather reflect final objective analyses of agency performance under existing policy". *Vaughn v. Rosen*, 383 F.Supp. 1049, 1053–54 (D.D.C.1974). The Court of Appeals af-

firmed the decision of the district court finding that, "to come within the privilege, and thus Exemption 5, the document must be part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters". *Vaughn v. Rosen,* 173 U.S.App.D.C. at 194–195, 523 F.2d at 1144. The Court described the evaluative reports as being informational in nature. "They provide the raw data upon which decisions can be made; they are not themselves a part of the deliberative process". *Id.,* 173 U.S.App.D.C. at 196, 523 F.2d at 1145. The Court finds that the Report in the instant case, likewise largely informational in nature, provided raw data upon which the former Attorney General made his determinations. The factual portions of the Report reflect the final objective analyses of the performance of the FBI and Gary Thomas Rowe, Jr., under existing policy. The factual portions do not reveal the deliberative process of the task force or the former Attorney General, and because these portions are segregable from exempt portions of the Report, they are subject to disclosure under the FOIA.

█ In making this determination, the Court is guided by the statements of the Court of Appeals in this Circuit, to the effect that:

> The likelihood that factual material will be segregable is smaller in cases dealing with attorney work-product than in cases dealing with the governmental deliberative process. In the process of administrative decision-making, it is likely that factual documents will be developed, for example, by lay personnel without decision making or advisory authority, which can be segregated from deliberative material without difficulty, and with minimal danger that the deliberative process will thereby be excessively exposed.

*Mervin v. F. T. C.,* 192 U.S.App.D.C. 212, 218, 591 F.2d 821, 827 (1978), cited in *Exxon Corp. v. F. T. C.,* 476 F.Supp. 713, 723 (D.D.C.1979). The Court recognizes that the staff of the task force was not technically "lay personnel" without any advisory

authority, but clearly the task force developed a document containing factual portions which can be segregated from deliberative material without difficulty. Based upon the affidavits submitted by defendant, the Court finds the Report contains some portions which reflect the advice, conclusions, and recommendations of the task force, and that these portions are protected from disclosure pursuant to Exemption 5. However, it is only those segments of the Report which consist of or contain the advice, conclusions, and recommendations of the task force on legal or policy matters, which are to be withheld.

Thus, in keeping with the policy considerations underlying the Freedom of Information Act, and the explicit statutory mandate rejecting the exemption by document approach, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection", 5 U.S.C. § 552(b), the Court will order disclosure of all reasonably segregable factual portions of the Report.[10]

*Exemption 2*

The defendant invokes Exemption 2 of the FOIA as grounds for withholding information pertaining to investigatory procedures used by the FBI in dealing with informants and methods by which the Office of Professional Responsibility conducts investigations. The defendant asserts that the release of such information would serve no public benefit and would disrupt OPR's investigatory efforts. Exemption 2 of the FOIA exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency". 5 U.S.C. § 552(b)(2). The Court of Appeals in this Circuit, after an exhaustive analysis of the legislative history of this exemption, concluded that Exemption 2 is to be narrowly construed and confined to the specific statutory language. In *Jordan v. United States Department of Justice,* 192 U.S.App.D.C. 144, 591 F.2d 753 (1978), the Court of Appeals found there are three key words in

---

10. The Court will set forth the specific portions of the Report in its Order.

the description of exempt material: "Solely", "internal", and "personnel". The Court explained that:

> 'Internal',... would seem to refer to those rules and practices that concern relations among the employees of an agency, as distinct from rules and practices that might relate to, or have a more direct impact upon, members of the public. The rules and practices by which an agency orders its *own* affairs among its *own* personnel would seem to invite little public interest in disclosure. Conversely, rules and practices that have a definite impact on the public would seem to be a more fit subject for disclosure. (Emphasis in the original).

*Id.* 192 U.S.App.D.C. at 154, 591 F.2d at 763. The Court also concluded that the word "personnel" would normally connote matters relating to pay, pensions, vacations, hours of work, lunch hours, parking, etc. and that the word "solely" emphasizes the limited scope of Exemption 2. See also, *Vaughn v. Rosen* (Vaughn II), 173 U.S.App. D.C. at 194, 523 F.2d at 1143 (documents not related to such "house-keeping" matters such as parking facilities, lunchrooms, sick leave and the like, held not exempt under Exemption 2). Thus, the Court in *Jordan* found that documents relating to the exercise of prosecutorial discretion by the United States Attorney for the District of Columbia were not exempt from disclosure pursuant to Exemption 2.

▮ The Court finds that the rules, regulations, and procedures of the FBI relating to the handling of informants are not protected from disclosure under Exemption 2. These procedures are not solely related to internal personnel rules and practices of the FBI, but rather have an impact upon the public. Also, since it appears the procedures for handling informants in the 1960's have changed, and that defendant has released to plaintiff the current FBI rules and procedures for handling informants, the Court cannot perceive of any possible harm to the agency resulting from the disclosure of outdated procedures.

▮ The Court also finds that defendant has failed to demonstrate that the OPR procedures are solely related to the internal personnel rules and practices of the agency. The defendant has not cited any specific harm which would result from the disclosure of this information and the materials are not entitled to protection under Exemption 2.

*Exemption 3*

▮ Exemption 3 of the FOIA protects from disclosure matters that are:

> specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular types of matters to be withheld.

The defendant invokes this exemption, in conjunction with Federal Rule of Criminal Procedure 6(e) which protects the secrecy of grand jury proceedings. The defendant states that a small portion of the Report dealing with the death of Viola Liuzzo contains grand jury material pertaining to the prosecutions brought for her murder. The plaintiff does not quarrel with the applicability of Exemption 3 to grand jury material, but argues that defendant's affidavits fail to identify adequately, where such material is contained in the Report. The Court finds Exemption 3 properly is invoked as to that information contained in the Report which relates solely to grand jury proceedings. The Court will allow defendant to excise from the Report those portions consisting solely of grand jury material. The defendant is to be guided by the second affidavit of Michael Shaheen at paragraph 17, which states that a "small portion" of pages 147 through 237 contains grand jury information, and the Court will assume that only a small portion of that section will be deleted.

*Exemption 6*

The defendant relies upon Exemption 6 of the FOIA to withhold what it claims is information reflecting reviews of personnel files of FBI agents and personal informa-

tion about informants and other individuals. The provision of the statute protects from disclosure, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". 5 U.S.C. § 552(b)(6). To support its claim under this exemption, defendant relies solely on the first affidavit of Michael Shaheen, which states at paragraph 17:

Exemption 6 has been asserted since the report reflects the results of reviews of the personnel files of all FBI agents interviewed by the Task Force. Additionally, information of a personal nature about informants and other individuals, and the conclusions the Task Force drew from that information, is included in the report. Disclosure of such information from these files would constitute a clearly unwarranted invasion of personal privacy.

■ In order for an agency to justify nondisclosure under Exemption 6, it must first establish that the requested information is in fact properly classified as a "personnel", "medical" or "similar" file. Next the agency must demonstrate that release of the withheld document would violate substantial privacy interests of those involved. If these burdens are met, the agency must then show that upon balancing the interests, the substantial interest in personal privacy is not outweighed by the public interest in disclosure. *Department of Air Force v. Rose*, 425 U.S. 352, 373, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); *Getman v. NLRB*, 450 F.2d 670, 674–677 (D.C.Cir. 1971). Exemption 6 was designed to "protect individuals from public disclosure of intimate details of their lives, whether the disclosure be of personnel files, medical files, or other similar files". *Board of Trade of City of Chicago v. Commodity Futures Trading Commission*, 627 F.2d 392, 399 (D.C.Cir.1980). Although the exemption is phrased broadly to protect individuals from a wide range of embarrassing disclosures, *Rural Housing Alliance v. United States Department of Agriculture*, 162 U.S. App.D.C. 122, 126, 498 F.2d 73, 77 (1974), "the context makes clear the Court's recog-

nition that the disclosures with which the statute is concerned are those involving matters of an intimate personal nature". *Sims v. CIA*, 642 F.2d 562 at 573 (D.C.Cir. 1980). Moreover, the decisions of this Court have established that information connected with professional relationships does not qualify for the exemption. *Id.*

■ The Court finds the defendant has failed to demonstrate that the information for which Exemption 6 is invoked, qualifies for protection under this exemption. Nowhere in the affidavits does defendant describe the information as being of an intimate personal nature. Nor does the defendant explain exactly what types of files were reviewed. Finally, defendant has not carried its burden of showing that disclosure would amount to a clearly unwarranted invasion of personal privacy. For these reasons the Court concludes that defendant cannot use Exemption 6 as a basis upon which to withhold portions of the Report.

*Exemption 7*

The defendant asserts that Exemptions 7(A–D) of the FOIA apply to various portions of the Report. Exemption 7 in pertinent part provides for nondisclosure of:

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation... confidential information furnished only by the confidential source....

5 U.S.C. §§ 552(b)(7)(A–D). The defendant invokes 7(A) as to information which it claims is pertinent to the pending criminal proceedings against Rowe in the State of Alabama for the murder of Viola Liuzzo. It is asserted that many of the pertinent

FBI materials which were reviewed by the task force and from which information was derived for inclusion in the Report have been disclosed to the State of Alabama but not to Rowe or otherwise to the public. Thus, defendant argues, disclosure of the Report would injure the enforcement proceedings of the State of Alabama.[11] Exemption 7(B) is asserted by defendant to protect those portions of the Report dealing with the Viola Liuzzo killing. Defendant claims that the release of this information would interfere with Alabama's interest in conducting a fair trial, and the impact on potential jurors could deny Rowe his right to an impartial adjudication. The defendant maintains that Exemption 7(C) protects from disclosure the identities of FBI agents and information about third parties appearing in the documents and to release the identities of these individuals or information regarding them would constitute an unwarranted invasion of their privacy. To the extent there is a public interest to be served by disclosure of this information, the defendant contends that the public interest is outweighed by the privacy interests involved in the Report. Exemption 7(D) is used by defendant to withhold the identities of individual sources such as citizens who provided information to the Task Force during its investigation, to the FBI during its investigation, established informants, and other persons interviewed under express and implied assurances of confidentiality. The defendant claims also that information derived from FBI documents is withheld to protect the identities of confidential institutional sources such as local law enforcement agencies.

The threshold inquiry regarding any document for which a section (b)(7) exemption is claimed is whether such document has been shown to be an investigatory record compiled for law enforcement purposes. The government agency bears the full burden of proof in establishing that the requirements of an exemption have been met before it can withhold a requested doc-

ument from disclosure. *Jordan v. United States Department of Justice*, 192 U.S.App. D.C. at 170, 591 F.2d at 779. The affidavits submitted by defendant in support of its motion for summary judgment state in very general and conclusory terms, the bases upon which Exemption 7 is invoked. For example, the second affidavit of Michael Shaheen, at paragraph 12 provides:

> Pages 65 through 73 trace Rowe's activities during the period of May 1961 to June 1963 and address particular civil rights incidents about which Rowe, as an FBI informant, reported to the Bureau or in which he was alleged to have participated. This section contains confidential information furnished by confidential sources. Its disclosure would constitute an unwarranted invasion of the privacy of Rowe, FBI agents, and other individuals who were subjects of investigative interest to the government. Its disclosure would also interfere with Mr. Rowe's right to a fair trial by the State of Alabama and with that State's enforcement of its criminal laws. All of this section is the result of the Task Force's analysis of FBI files and interviews conducted by Task Force members. None of it is based on public source information.

This paragraph is typical of the manner in which the defendant attempts to carry its burden. The defendant recognizes that in order for Exemption 7 to apply to the Report, it must meet the threshold test of being an investigatory record compiled for law enforcement purposes. In its brief, the defendant asserts that two kinds of investigatory records are present in this case:

> First, materials derived from FBI records which were compiled in the course of its investigations in the 1960's. Second Shaheen Affidavit ¶ 5; First Shaheen Affidavit ¶ 8. Second, the records created by the Task Force were also compiled for law enforcement purposes. Second Shaheen Affidavit ¶ 5. The notice describing the kinds of records created by or under

---

11. It is undisputed that the statute of limitations has run as to any violations of federal law that Rowe might have committed in the early

1960's. Second Shaheen Affidavit, Appendix A.

the supervision of OPR is found at 45 *Fed.Reg.* 77–78 (Feb. 5, 1980).

Brief of defendant at page 19. The references in the Shaheen affidavits are no more illuminating on this issue than the brief.

██ Without deciding whether the original FBI files reviewed by the Task Force or the records created by the Task Force were compiled for legitimate law enforcement purposes, the Court finds there is a distinction to be made between the original FBI files and the records, and the Report at issue. The Report is not simply an extension of those documents. As was recently stated by the Court of Appeals for this Circuit:

> [T]he statutory scheme of the FOIA very clearly indicates that exemptions from disclosure apply only to *documents*, and not to the use of the information contained in such documents. Thus, when information has been recompiled in a new document for a new purpose, the new document must qualify independently for any exemptions from disclosure under the FOIA. (Emphasis in original).

*Abramson v. FBI*, No. 79–2500, (D.C.Cir., October 24, 1980), slip op. at 13. Thus, the Report itself must independently qualify as an *investigatory record compiled for law enforcement purposes*. The defendant has failed to show that the Report so qualifies and cannot rely on Exemption 7 to withhold portions of the Report to the extent that it does.

██ The Court finds that the only Exemption 7 claims that can be invoked in this matter are 7(C) and 7(D) to withhold from disclosure the identities of FBI agents, informants, third parties, and confidential sources other than Rowe,[12] and confidential information furnished *only* by confidential sources. In making this finding the Court will assume arguendo, although the defendant has not demonstrated, that the original

FBI documents reviewed by the Task Force were compiled for legitimate law enforcement purposes. To the extent that identities of individuals have been derived from original FBI files and incorporated into the Report, they are entitled to protection under Exemption 7(C). See generally, *Baez v. United States Department of Justice*, 647 F.2d 1328 at 1338–1339 (D.C.Cir.1980). Moreover, the plaintiff does not seek release of the identity of any individual mentioned in the Report and the public interest in this instance does not outweigh the privacy concerns. Because the Court finds the protection of confidential sources is warranted, the Court will allow defendant to excise from the Report confidential information furnished *only* by confidential sources. If such information is not readily discernible in the Report, and is instead compiled in a manner that intertwines it with information from non-exempt sources, it is to be disclosed. In other words, the defendant is to excise only that information which would disclose the identities of confidential sources. The defendant shall release any other information in the Report not falling within these two exemptions.

██ The Court finds defendant's Exemption 7(A) and 7(B) arguments to be without merit. The defendant itself is not proceeding against Rowe and the Report was not compiled as an aid to the Alabama prosecution, which has been permanently enjoined.[13] Also, the degree of publicity that might come about as a result of the disclosure of the Report is speculative at best. Under these circumstances, the Court cannot now perceive of any harm which will result to the state proceedings or Rowe by the release of this document.

### Conclusions

Based upon the foregoing, the Court finds and concludes that the defendant has failed to demonstrate its entitlement to

---

12. In view of the public "Summary of Results of the Department of Justice Task Force Investigation on Gary Rowe, Jr." and other publicity concerning Rowe, including his own book, the Court finds no unwarranted invasion of Rowe's personal privacy under these circumstances.

13. On October 2, 1980, Judge Varner of the U.S. District Court for the Middle District of Alabama, permanently enjoined the State of Alabama from prosecuting Gary T. Rowe, Jr. for the Viola Liuzzo murder. The State has appealed this decision to the U.S. Court of Appeals for the Fifth Circuit.

summary judgment on the bases upon which it has claimed, and the Court denies the government's motion. The Court also finds that the plaintiff has met its burden of demonstrating its entitlement to the Gary Thomas Rowe, Jr., Task Force Report, and the Court will grant the motion of the plaintiff for summary judgment. The Court will issue an Order consistent with this opinion, that sets forth the portions of the Report which are to be released by the defendant.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the memoranda of points and authorities in support of and in opposition to the motions, the arguments of counsel for the parties, and the entire record before the Court, and consistent with the Memorandum Opinion filed by the Court, it is this 31st day of March, 1981,

ORDERED that the motion of defendant United States Department of Justice be, and hereby is, DENIED; and it is

FURTHER ORDERED that the motion of plaintiff Playboy Enterprises, Inc. for summary judgment be, and hereby is, GRANTED; and it is

FURTHER ORDERED that within fifteen (15) days from the date of this Order, the defendant shall release to the plaintiff, the following portions of the Gary Thomas Rowe, Jr. Task Force Report:

1. Pages 17 through 29 shall be released in its entirety, after the deletion of names and identifying data of FBI agents, confidential sources and confidential information furnished only by confidential sources;

2. Pages 30 through 47 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, confidential sources and confidential information furnished only by confidential sources;

3. Pages 48 through 64 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

4. Pages 65 through 73 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

5. Pages 74 through 96 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

6. Pages 97 through 104 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, confidential sources, and confidential information furnished only by confidential sources;

7. Pages 105 through 132 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

8. Pages 133 through 146 shall be released in its entirety, after the deletion of the names or other identifying data of FBI agents, the informant who is the subject of this portion of the Report, confidential sources, and confidential information furnished only by confidential sources;

9. Pages 147 through 237 shall be released in its entirety, after the deletion of information obtained during grand jury proceedings, names and other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

10. Pages 238 through 257 shall be released in its entirety, after the deletion of the names and other identifying data of FBI agents, third parties, confidential sources, and confidential information furnished only by confidential sources;

11. Pages 257 through 262 shall be released in its entirety, after deletion of the names and other identifying data of FBI agents, and third parties;

12. Appendix I (Pages 1 through 7) shall be released in its entirety;

13. Appendix II (Pages 8 through 11) shall be released in its entirety, after deletion of the names of confidential sources and confidential information furnished only by confidential sources;

14. Appendix III (Pages 12 through 51) shall be released in its entirety.

15. Pursuant to Exemption 5 of the FOIA, the defendant shall excise from any portion of the Report that is otherwise to be released, any segments of the Report that are *specifically* designated as conclusions, recommendations, opinions, or advice of the Task Force making the Report; and it is further

ORDERED that upon the conclusion of any appeal, or upon the determination that no appeal will be taken, the parties shall, if appropriate, attempt to resolve out of court any claim by plaintiff for reasonable attorneys' fees and litigation costs. In the event that the parties fail to reach an agreement, the plaintiff may submit to the Court an application for costs and fees, and the Court will retain jurisdiction over this matter to determine plaintiff's entitlement to such costs and fees, and it is further

ORDERED, ADJUDGED, and DECREED, that judgment be entered in favor of the plaintiff.